Griffin vs. The State.

GEORGE M. GRIFFIN, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

|  |  |
|---|---|
| 26 | 493 |
| e116 | 518 |
| 26 | 493 |
| 125 | 308 |

[1.] The taking the impression of the key which unlocks the door of a storehouse, for the purpose of making or procuring a false key, with the intent of entering the house and stealing therefrom, is an attempt to commit larceny from the house, by the person taking the impression of the key, whether he intended to enter and steal, himself, or to procure another to do it.

[2.] If a motion be made to continue a cause on the ground of the absence of a witness, it must be shown that his evidence will be material on the trial of the cause; that the party cannot go safely to trial without such evidence; and in case of suspicion, the Court should look closely into the circumstances, and may consider what has passed before it in the progress of the cause, to determine on the merits of the application.

[3.] Where facts are *already in proof*, or a conversation with an accused party on trial, evidence of the repetition of the same conversation between parties attempting to lay a plan to detect him, is admissible.

[4.] If a person commit an act in the county where an offence, if perpetrated, must be committed towards the commission of that offence, he may be tried and convicted in that county, and he may be convicted whether he intended to commit the offence, or procure another to do it.

Griffin vs. The State.

[5] A request to charge the jury upon detached parts of the evidence, in order to show a want of jurisdiction in the Court, omitting a part which shows that the Court had jurisdiction, ought not to be given to the jury. But a solicitation to commit an offence is an act towards its commission.

[6.] If a person be indicted for an attempt to commit a crime, by using persuasions, and offering bribes to another to induce him to perpetrate it, the offence of "attempt" is complete in the county where the offence, if perpetrated, must have been committed, whether the person who used the persuasions or offered the bribes, was in the county at the time or not.

Misdemeanor, in Morgan Superior Court. Tried before Judge HARDEMAN, at ——— Term, 1858.

The facts of the case, and the grounds of exceptions to the rulings and decisions of the Court below, are sufficiently set forth in the opinion of Judge McDONALD, who pronounced the judgment of this Court, and in Judge LUMPKIN's concurring opinion.

A. H. H. DAWSON; and CONE, for plaintiff in error.

SOL. GENERAL, contra.

By the Court.—McDONALD, J. delivering the opinion.

This was an indictment for misdemeanor, in the Superior Court of Morgan county. There were two counts in the indictment. The first count charged that the plaintiff in error, on the fourteenth day of August, in the year 1855, in the county of Morgan, with force and arms, did unlawfully, wrongfully, feloniously and with intent to steal, attempt to break and enter the storehouse of one Charles W. Richter, which storehouse was then and there situated in the town of Madison, in said county, and did then and there unlawfully, feloniously and wrongfully attempt to privately steal, take and carry away from said storehouse, divers jewelry, &c., of the value of five thousand dollars, and other things of value; and then and there deposited and being in said storehouse, and then and there the property of the said

Griffin vs. The State.

Charles W. Richter, which said attempt then and there to commit larceny from the house, (an offence prohibited by law, and punishable by imprisonment and hard labor in the penitentiary, for any time not less than two years nor longer than five years,) was and is contrary, &c.

The second count in the indictment charged that the said plaintiff in error, in the county of Morgan, on the 14th day of August, in the year 1855, with force and arms, feloniously, unlawfully, and with intent to steal, did attempt to break and enter the storehouse of Charles W. Richter, situated in the town of Madison, in said county, and did then and there attempt as aforesaid, to break and enter said storehouse, with intent to steal as aforesaid, by unlawfully, wrongfully and privately taking the impression of the key which unlocked a door of the said store house of the said Charles W. Richter, and from said impression so taken, preparing a false key to fit said lock, for the purpose of unlawfully, feloniously, wrongfully and fraudulently entering, and through the agency of said Hiram T. Jones, to break and enter the said storehouse of the said Charles W. Richter, with intent feloniously, wrongfully, unlawfully and privately to steal as aforesaid, the goods, wares, jewelry, &c., &c., of the value of five thousand dollars, and other things of value, and these the property of the said Charles W. Richter, which said attempt to commit said offence of larceny from the house, (an offence prohibited by law, and punishable by confinement and labor in the penitentiary for any time not less than two years, nor longer than five years,) was and is contrary, &c.

The plaintiff in error was arraigned on the bill of indictment, and on his arraignment excepted and demurred thereto, and for cause of exception and demurrer, said :

1st. That there is no offence set forth and charged in said indictment, which is punishable by law, or that will subject him to punishment.

2d. That said indictment contains no statement of facts

sufficient in law to charge the defendant with the offence of an attempt to commit the crime of larceny from the house.

3d. That the indictment contains no statement of facts sufficient in law to charge the defendant with the offence of an attempt to commit the crime of larceny from the house.

4th. That said indictment contains no charge or allegation which, if true, are sufficient in law to constitute the crime of attempt to commit larceny from the house.

[1.] This indictment is on the 2d section of the 15th division of the penal code, (*Cobb*, 844,) which is in the followlowing words: "If any person shall attempt to commit an offence prohibited by law, and in such an attempt shall do any act toward the commission of such offence, but shall fail in the perpetration thereof, or shall be prevented or intercepted from executing the same, such person, so offending, shall be indicted for a misdemeanor, and on conviction thereof, shall, in cases where no provision is otherwise made in this code, or by law, for the punishment of such attempt, be punished," &c.

The Act does not describe the manner in which an attempt to perpetrate a crime shall be made to constitute the offence.

If the facts charged in the indictment to have been done, amount to an attempt, the offence of attempt to commit the crime is sufficiently charged, and the demurrer ought to be overruled. The indictment charges, that in the county of Morgan, the accused took the impression of the key, and prepared a false key from that impression, to unlock the door of Charles W. Richter's store, with the intention, through the agency of Hiram T. Jones, to break and enter the store and to steal. So far as the indictment is concerned, the offence, if an offence, is sufficiently charged to have been committed in the county of Morgan. But it is said that no offence is charged, but only an intention to do an act, and a preparation to do it. The intention wrongfully and feloniously to

break and enter the storehouse of Richter, with the intent to steal, is very distinctly charged in the indictment.    It is also alleged, that this was to be done through the agency of Hiram T. Jones.    It is alleged that the accused took the impression of the key to the lock on the door of the storehouse, and that he had a key prepared.    Here are two acts towards the accomplishment of a felonious object, and done with the intent to accomplish it.    The having in possession a key, with the intent to break and enter a house, in order to steal, is a criminal act on the part of a person apprehended with it.    *Penal Code, Cobb Dig.* 817.    The case of *Rex vs. Sutton,* 2 *Str.* 1074, is a strong authority in support of this indictment.    The defendant was convicted of a misdemeanor, for having in his possession iron stamps, with the intent to impress the sceptres on sixpences.    The Court said, the " intent was the offence, and the having in his custody is an act that is evidence of that intent."

The object of the Act under which the plaintiff in error is indicted, is to punish intents to commit crime, if they are demonstrated by an act.    The word " attempt" ordinarily implies an act, an effort, but the General Assembly, in this statute, uses it as synonymous with " intend," for it declares that if a person shall attempt to commit a crime, and in *such attempt* shall *do any act* towards the commission of such offence, &c.    The accused, according to the bill of indictment, conceived the purpose of perpetrating the offence, and he did an act towards the commission of it, for it was an act to take the impression of the key, and that alone is sufficient to subject him to the law; but he prepared the key, and for the object, and so the indictment alleges.    It is urged, however, by the learned counsel for the plaintiff in error, that if he intended to commit the crime through the agency of another person, that would only have made him accessory, if the offence had been committed by that other.    In the case of *The King vs. Higgins,* 2 *East.* 5, the solicitation of an-

other to commit a felony, was held to be an act, and if there was an act done by the accused, that would have made him a principal felon; if the offence had been committed, any act done towards its commission, would make the offence of "attempt" complete.

. Several combined to forge an instrument, and each executed, by himself, a distinct part of the forgery, and they were not together when the instrument was completed, and they were, nevertheless, all held to be guilty as principals. *Wharton's Cr. Law*, 65 ; 1 *Russ. on Cr.* 32 ; 2 *British Crown Cases*, 307 ; *Ibid*, 304; 1 *Ib.* 446. (See *last case cited.*)

Griffin did an act towards the perpetration of the offence, and if the offence had been committed, he would have been a principal and not accessory. The demurrer to the indictment was, therefore, properly overruled by the Court.

[2.] After the demurrer was overruled in the Court below, the plaintiff in error moved a continuance of the cause, and in support of the motion deposed that, in consequence of the then recent finding of the indictment, (found at the Term of the Court at which the prisoner was put on his trial,) he had been able to summon no witnesses; that in the former case pending in said Court, he had summoned A. B. Luce, who resides in Savannah; that, at the previous Term, said Luce was in attendance upon the Court, but was then sick at home and confined to his bed; that by the said witness he expected to prove the good character of the defendant and his hand writing, and that letters which it would be attempted to be proved were written by him, were not in his hand writing; that he had no other witness in Court by whom he expected to prove all the foregoing facts; that he expected to have the witness in attendance at the then next Term of the Court; that said application was not made for delay, but that justice might be done, and he might be enabled to procure the attendance of said witness.

The presiding Judge refused the continuance on the ground, that this indictment is substantially the same as one which

had been continued by the defendant for three several Terms of the Court. At another Term of the Court he announced himself ready for trial, and after a jury was empannelled, he absented himself from Court without leave, and forfeited his recognizance. That bill of indictment was *nol. pros'd* by the Solicitor General for a mere formal defect, and the one on which he was now to be put on trial was found by the grand jury for the identical misdemeanor, not at all varying the substance of the same. These are the reasons assigned by the Court for refusing the motion. The 35th common law rule applies to continuances of causes on the civil side of the Court, for the party continuing must depose that the witness resides in the county.

The Act of the legislature regulates continuances on the criminal side of the Court. *17th section of the 14th division of the Penal Code, Cobb's Dig.* 835. The Act requires that every person against whom a bill of indictment is found, shall be tried at the Term of the Court at which the indictment is found, unless the absence of a material witness or witnesses, or the principles of justice should require a postponement of the trial, and then the Court shall allow the postponement of the trial until the next Term of the Court; but the Court is vested with power to continue criminal causes from Term to Term, as often as the principles of justice may require, upon sufficient cause shown on oath. The defendant in the Court below had been indicted for a misdemeanor, and the Court had postponed the trial for three Terms, and at the fourth Term, when put on his trial, he absented himself without leave, and forfeited his recognizance, which was equivalent, as the presiding Judge remarked, to a fourth continuance. He showed no disposition, whatever, to come to trial. That bill was *nol. pros'd*, and he was indicted again, as the Judge said, for the *identical* misdemeanor, not varied in substance. The Court considered the entering of a *nolle prosequi* as nothing more than a necessary proceeding to amend, in matter of form, the old

indictment, and it became his duty, as administrator of justice and the law, to examine well the grounds on which the continuance was asked.    It was strongly urged in the argument, that the Court could not notice the former proceeding, though within his knowledge, because it would be like receiving a counter showing, which, it was said, is not allowable.    This, I apprehend, is a mistake.    It is not a rule, without exception, that a counter showing will not be heard.    In England, a rule founded upon affidavit, is moved for the continuance of a cause, and cause is shown against it, and where there is no suspicion of the *bona fides* of the application, an affidavit in the common form is sufficient; " but where a suspicion arises, from the nature of the question, or *from contrary affidavits,* the Court will examine into the ground upon which the delay is asked ; and have, in criminal as well as civil cases, refused to put off a trial, notwithstanding an affidavit in common form." *Imprey's Prac. K. B.* 362 ; *Rex vs. D'Eon,* 3 *Bur.* 1514.

The facilities with which continuances are obtained, is a great obstruction of justice.    The delay of causes by the artful contrivances of parties, may involve their antagonists in irretrievable injury, and Courts ought to look closely into all applications for the postponement of the trial of causes, lest injustice be done thereby to parties or the public.    The Court, we think, had the right to act upon his knowledge of what passed before him judicially, and to collect from that and other circumstances, the object and motive of the party in moving the continuance.    The statute entitles the party to a continuance of the cause, for the absence of a material witness at the Term of the Court at which the bill is found, if he is not in default.    Afterwards, the Court *has the power* to grant continuances as often as the principles of justice require it.    The presiding Judge considered the accused as applying for a fifth continuance of the cause; and conceding it to have been the case, as the witness had been subpenaed, and was prevented from attending Court by sickness,

if the showing had been sufficient in other respects, the trial ought to have been put off.

We will examine the affidavit in connection with the facts stated in the decision of the Court, upon the application. That he had not time to subpena witnesses, in consequence of the recent finding of the bill, is not sufficient; for the same issue was to be tried which had been made on the *nol. pros'd* bill, and it does not appear that he had not summoned witnesses to attend on the trial of that issue. On the contrary, it appears that he had summoned the absent witness, Luce. In that part of the showing it does not appear that there were witnesses material to his defence, absent. The affidavit makes another ground, and it is, that Luce had been subpenaed in the former case; that he was sick at home, (in Savannah,) confined to his bed; that he expected to prove by him his good character, and his hand writing ; and that certain letters, which it was supposed would be offered in evidence against him, were not in his hand writing; that he had no other witnesses in Court by whom he expected to prove *all* the foregoing facts. The terms of the affidavit imply, that he had witnesses in Court by whom he could prove some of the foregoing facts. All the proof he expected to make by the absent witness, was such as may be usually made by numerous witnesses; viz: character and hand writing. This is not shown to be an exceptional case. It will not do to say, that when the matter to be proved is such as, from the nature of it, may be proven by many witnesses the absence of a single witness whose evidence would merely corroborate the rest, would warrant the continuance of the cause.

It might be important when there is likely to be an equiponderance of evidence, or any thing like it, in the contested question, but that does not appear to be the case here. There is an absence of statement to that effect. To allow a rule, of the kind contended for, would afford a party to look out for a sick or decrepid witness, to subpena him to prove a fact

which, within his knowledge, is susceptible of proof by sound and healthy persons, perfectly at his command. The affidavit does not say that he cannot go safely to trial without the absent witness. To entitle a party to a continuance on the ground of the absence of a witness, it must be shown that his evidence is material in the cause, that he cannot go safely to trial without it, and if there be a suspicion that the application is merely for delay, the Court should look closely into it, and the presiding Judge may rely upon his own knowledge of what has passed before him, judicially, to determine on the merits of the motion.

[3.] The State offered to prove, as introductory to other evidence, a conversation between the witness on the stand, Hiram T. Jones, and Charles W. Richter, in which was rehearsed a conversation between the witness and the defendant on trial, for the purpose of arranging a plan for his detection. This evidence was objected to by the prisoner; the objection was overruled, and the decision of the Court thereon was excepted to.

The witness gave evidence against the prisoner, of the same conversation, and its rehearsal in the manner stated, could have given it no additional weight or influence with the jury.

The conversation testified to by Richter, was for the same reason admissible.

The extract of the letter from Richter to Jones, contained no matter implicating the accused, but was admissible only as inducement to explain the conduct of the parties engaged in the detection of the defendant.

[4.] After the evidence was delivered to the jury, the counsel for the prisoner requested the Court in writing, to give the following charge to the jury:

That, admitting the making of the key would constitute the crime, yet if the jury believe from the evidence, the key, if made at all, was made in the city of Savannah, in the county of Chatham, and not in the county of Morgan, the

defendant cannot be convicted in the county of Morgan, and they must therefore acquit the defendant.

Without discussing the soundness of this request, as a legal proposition now, it is sufficient to say, that the prisoner did an act in the county of Morgan towards the commission of the offence, and he may be tried, and if guilty, convicted in that county, of the offence of attempt, &c.

The next request is, that if the jury believe from the evidence, that the defendant took the measure of the key of the storehouse, yet if he did it, not with the intent to commit the larceny from the house himself, but to procure another person to commit it, he is not guilty of the offence with which he is charged. This request the Court refused to give, and his refusal so to charge is excepted to. For reasons assigned in this decision on the demurrer to the indictment, our judgment, it will be seen, is, that the Court committed no error in his refusal to give this request in charge to the jury. The defendant did an act which would have made him a principal, if the offence had been consummated.

[5.] The next request made of the Court to charge the jury is, that should the jury even believe from the evidence, that the defendant persuaded the witness, H. T. Jones, and offered bribes to induce him to commit the crime of larceny from the house, yet such persuasion, and such offer of bribes, does not make the defendant guilty of an attempt to ·commit larceny from the house. This request the Court refused to give in charge to the jury, and the counsel for defendant excepted.

Our reasons for overruling this assignment of error, are found in what is herein said on the demurrer to the indictment.

[6.] Two other requests were made of the Court to charge the jury, viz:

1st. That if the jury shall even believe that such persuasions and such offers of bribes were made, yet if this was done in the city of Savannah, and county of Chatham, the

defendant cannot be convicted in the county of Morgan, but only in the county of Chatham.

2d. That should the jury even believe that the defendant wrote letters from the city of Savannah, and county of Chatham, directed to the witness, Jones, in other counties, persuading him to commit the crime of larceny from the house, the writing and sending of such letters do not constitute the offence of an attempt to commit larceny from the house; and especially does it not make the defendant guilty of that offence in the county of Morgan. The Court refused both these requests, and his decision is excepted to. These requests are both predicated on the assumption, that the verbal or written persuasions and offers of bribes to Jones, to commit the offence, were the only acts done by the defendant towards its perpetration, excluding also the acts done in the county of Morgan, and the sending by railroad the false key from Savannah, to Jones in Madison, which was proven to have been received by him in the county of Morgan. But independent of this, we hold that it makes no odds where the persuasion is used, or the letters written, whether in or out of the State, the offence of attempt is complete in the county where the offence, if consummated, must have been committed.

An attempt to commit treason in the State, or to excite a servile insurrection in any county in this State, is complete in the county where the offence must be committed, if committed, and he who does an act towards its commission, is triable in that county, though he may never have been in it. If the attempt be by letter, or such means, the transmission of the letter to the county, and 'its reception there, is an act in the county.

The Court charged the jury, that if they believed from the evidence, that the defendant took the measure or impression of the key, in the county of Morgan, and afterwards made or procured the key in the county of Chatham, and then sent the key to the witness, Hiram T. Jones, in the county of

Morgan, with a solicitation to him to commit the crime of larceny from the house, in the county of Morgan, the defendant is guilty of an attempt to commit the crime of larceny from the house in the county of Morgan. This charge of the Court is excepted to. Without a repetition of the reasons already assigned in support of our judgment, we will say, that this charge conforms to the law of the case.

Judgment affirmed.

LUMPKIN, J. concurring.

The second section of the 15th division of the Penal Code is, that " if any person shall attempt to commit an offence prohibited by law, and in such attempt shall do any act toward the commission of said offence, but shall fail in the perpetration thereof, or shall be prevented or intercepted from executing the same, such person so offending shall be indicted for a misdemeanor, and on conviction thereof shall, in cases where no provision is otherwise made in this code or by law for the punishment of such attempt, be punished as follows," &c. (*Cobb*, 844.)

Under this provision of the code, George M. Griffin was indicted and convicted in the Superior Court of Morgan county for an attempt to steal jewelry from the storehouse of one Charles W. Richter in said county of Morgan. The proof showed that Griffin, while in Morgan county, took the impression on tin of the key to the door of the building; that he returned to the city of Savannah, where he resided; made a key for the purpose of entering the storeroom; sent it in a box of fruit by express to one Hiram F. Jones, in Madison, Morgan county, who feignedly agreed to become the accomplice of Griffin in the perpetration of the contemplated crime; and who, after plundering the store of its most valuable contents, was to fire the building, in which Griffin was interested, and who had previously effected an insurance on the premises. Jones was then to meet Griffin

at the 79 mile station, on the Central Railroad, and divide with him the spoils.

The proof being full and complete as to the foregoing facts, was the conviction of Griffin in Morgan county, for an attempt to commit larceny from the house, legal?

For myself, I entertain not a doubt upon the question.

What is an attempt to commit a crime? It is an endeavor to accomplish it, but falling short of execution of the ultimate design. In many cases it is difficult to determine the difference between preparations and attempts to commit crime. One may intend to commit a crime and do many things towards its commission, and yet repent of his purpose. The law gives to such an one a *locus penitentiæ*. One of the illustrations given in the books is, where a man buys poison and mixes it in the food designed for his victim, and places it on the table that he may eat it. If he take back the poisoned food before it is tasted, or an opportunity is given of swallowing it, awakened by a just consideration of the enormity of the crime, he will not be guilty of an attempt to poison. All that was done would amount only to preparation.

Is this Mr. Griffin's case? Did he countermand his repeated instigations to his supposed confederate urging him to the speedy execution of his diabolical scheme? Did he recall the key? On the contrary, had he not consummated his part of the preparations—all that he had to do except to share the spoils? and was he not waiting in hopeful anxiety to learn the result? To welcome the glad tidings that a large portion of Madison was in ashes—that Richter perhaps was beggared, and to wrench from the Insurance Office the rewards of his iniquity? Let his letters respond. History records that Nero fiddled while Rome was consuming under the flames kindled by this monster. Griffin's correspondence rescues this story from being branded as a fable.

If an attempt means an endeavor, trial, undertaking, ef-

fort to gain a point, then most certainly George M. Griffin, the defendant, was guilty of the attempt to rifle the store-house of Charles M. Richter of its jewelry.

It turns out that the section of our Penal Code upon which this prosecution was formed, is a *verbatim* transcript from a similar provision in the Revised Code of New York. One Bush was tried in that State and convicted of an *attempt to commit arson.* The testimony on the trial was, that Bush, the defendant, requested one Kinney to set fire to one Shelton's barn, offering him a reward, and giving him a match for that purpose, *not meaning to be present himself at the doing of the act. It clearly appeared that Kinney never intended to commit the crime.*

Perhaps no two cases were ever more alike in every particular.

The Supreme Court of New York say—"The act imputed to Bush was, no doubt, an attempt to commit an offence. It is admitted that he endeavored to make himself an accessory before the fact. A mere solicitation to commit a felony is an offence, whether it be actually committed or not. This was held in *King vs. Higgins (2 East. 5).* In the case before us, there was more. The solicitation was followed by furnishing the instrument of mischief."

And so here, there was not only the solicitation, but the key was prepared and furnished for entering the store. And that is not all; the goods were to have been divided between the parties, Griffin to receive his share. It matters not to me whether the proof in this case would have made Griffin a principal or an accessory, provided the crime had been actually committed. He would unquestionably have been one or the other. He would have committed a felony or aided and abetted in its commission. He would have been guilty of a crime. Failing then of accomplishment as it has, by no act of repentance or drawing back on the part of Griffin, he is guilty of the attempt, no matter whether the successful result of that effort would have made him a prin-

cipal or an accessory. And the maxim, that what a man does by another, he does by himself, whether true or not, need not be invoked to help out this case.

Was Griffin entitled to a continuance on account of the absence of the witness, A. B. Luce, who had been subpened and was unable to attend Court on account of his sickness, and by whom the defendant swore he expected to prove that the letters read against him on the trial were not in his handwriting?

Mr. Luce, the witness, lived in Savannah, where there must have been many others acquainted with the handwriting of Mr. Griffin. His counsel in the Court-house knew his handwriting, and were competent witnesses. Why were neither of them sworn on the trial? Could the testimony of Mr. Luce possibly have changed this verdict? It is impossible. For not only was the handwriting of the defendant clearly identified, but in reply to letters addressed to him, his answers were transmitted from time to time, and the key sent in the box of fruit, with such comments as no one who was a stranger to the plot could have made. There is no evading the force of these facts, unless it could have been shown that this was a conspiracy against Griffin, and that the allies of Jones were in Savannah to intercept the communications forwarded from Madison, and had answered them in the name of Griffin. Where is there a particle of proof to support such an hypothesis? Was the Post Master at Savannah examined to ascertain whether Mr. Griffin's letters were delivered to any one else? Mr. Griffin himself has never pretended that he was the victim of any such conspiracy.

Three times this prosecution had been continued before by the defendant. At the fourth term after announcing himself ready, and putting the country to the trouble of empannelling a jury, Griffin absented himself from the Court without leave, forfeiting his recognizance. To allow a further postponement of the case, under these circumstances, to procure

the attendance of a witness whose testimony could not possibly vary the result, instead of being required by the principles of justice, would be to trifle with the criminal justice of the country.

The defendant objected to certain conversations and correspondence, going in evidence, which took place between Jones and Richter, he not being present. I would dispose of this assignment of error summarily, by remarking that these conversations and letters establish no fact against Griffin, and serve merely to connect and explain the trap that was set to catch this culprit, and in that view were admissible. It will be observed that there was no motion for new trial in this case.

Upon every question, then, made in this record, I vote freely for affirming the judgment of the Circuit Court. I should be slow to believe that a person occupying the social position of this defendant could be guilty of the crime charged upon him in this indictment. But the fact once established, as it indisputably is, I would be the last to save him from the punishment he has brought upon himself. Let it not be said, to its disgrace, that the law is a respecter of persons. That while the poor man is incarcerated in the Penitentiary for stealing a flitch of bacon, to satisfy the hunger of his wife and children, the bank officers and others occupying high fiduciary positions, may rob by the wholesale and go unwhipped of justice. On the contrary, for the sake of the example, the higher the offender the more sure and unerring should be the blow. No class is privileged to monopolize crime with impunity in this country.

BENNING, J. dissenting.

I dissent from two of the decisions made in this case.

1st. I think that the motion for a continuance, ought to have been granted.

The showing for a continuance was clearly sufficient, even

if we concede, that the new presentment did not make a new case, but merely made a continuation of the old case; and it is quite questionable, whether this is a concession that ought to be made.

If then, the showing was sufficient; it was an error in the Court, to refuse the motion.

Does it not follow then, that a new trial ought to be granted? It is said that it does not. It is said, that even if the evidence wanted by Griffin, had been in, it would not have been sufficient, to counterbalance the other evidence in the case, and therefore, that the verdict would have been, the same. But I am not sure of this. The evidence wanted by Griffin, was that of a witness who would have sworn, that the letters purporting to be Griffin's were not in his hand-writing. Now, if those letters were not Griffin's, the fact was one, conclusive to show, that the charge against him was false, and the result of most wicked contrivance. Would the absent evidence have been sufficient to prove this fact? That evidence would have been, it is true, but the evidence of a single witness; and also, it would have had against it the evidence of four other witnesses; for four others swore, that they believed the letters to be in Griffin's hand-writing; yet that evidence, might, I think, have been sufficient to raise a reasonable doubt, whether the letters were in his hand-writing. It might have been the evidence of a witness of high character, swearing from a familiar and long continued acquaintance with Griffin's hand-writing. And if it had been, it would have sufficed, I think, to raise a reasonable doubt whether the letters were his. Because the evidence to show that the letters were his, though it consisted in the belief of four witnesses, was after all, rather weak. The four were Jones, Richter, sr., Martin and Campbell. Not one of these had any familiarity with Griffin's hand-writing.

Jones says; "has seen defendant write several times, in the store"; has seen defendant write on the books, and on

tags attached to watches." This does not signify intimate acquaintance, with Griffin's hand-writing. Besides, Jones' testimony is to be taken with much suspicion. He confesses to having been engaged in a deep laid plan to "trap" Griffin. Of course, then, he greatly desired Griffin's conviction. He too, is a man who, when it was proposed to him, as he says, to rob a store, and then burn it, and with it, it might be, a whole town, instead of showing offence, coolly entered on the discussion of the reward, he was to get. And, then, he had been charged himself, with taking a breastpin from the store of the two young Griffin's and giving it to one Snellings.

Richter, sr., says; "Never saw defendant write. Received letter from defendant in 1853. Next letter received 8th October 1855. Judges of defendant's hand-writing from those two letters." The last of these two letters was one of those to be proved. This witness, then, had next to no acquaintance at all, with Griffin's hand-writing. And he, too, was engaged in the plan to "trap" Griffin.

Martin, says; "witness received two letters in 1853, from defendant. He believed said letters to be from defendant. His knowledge of defendant's hand writing is derived exclusively from said letters."

Here again are very slight facts, on which, to base a belief of hand-writing.

As to Campbell: His belief was founded merely on a single letter to himself, and that but a letter of introduction.

The evidence, then, that the letters were Griffin's, though coming from four witnesses, was far from strong. I can conceive of evidence coming from a single witness that would be such as to be sufficient to balance, if not to overbalance it all.

I know, it may be said, that the circumstances are confirmatory of the evidence of the four witnesses; the post-marks; the improbability that any one but Griffin, would take letters out of the post office addressed to him, and answer them in

his name; the receipt of the box containing the key from the Express company. As to this last however, I may ask, why was it not shown, that Griffin *delivered* the box to the Express company. That would have made out the case against him, completely. And that this was not shown, is calculated of itself, to suggest a suspicion that the fact did not exist. But I make one general answer; contrivance could have manufactured all of these circumstances: and the case is one which authorizes us, to suspect contrivance.

I think, then, that the refusal of the motion to continue the case, was a sufficient ground to require the granting of a new trial.

2d. The Court was requested in substance, to tell the jury, that if Griffin's intent was not to steal from the shop himself, but, by *solicitation* and *bribery, to procure Jones to do* it, he was not guilty of an attempt to steal from the shop. And the Court I think, ought to have granted the request.

The general rule is, that if A. procures B. to commit a crime, it is not A. that commits the crime, but B., and A. stands merely as B's accessory.

And this rule is founded on both what is true in fact, and what is true in law.

Procuring another to commit a crime, is in fact a different thing, from committing it yourself. Different words are needed to express it; different proofs, to establish it. It is also a different thing in law. The Penal Code, (2. Div.) when it speaks generally, declares, that he who perpetrates, (i. e. commits,) the crime, shall be a principal; and, that he who procures, counsels or commands the crime to be committed, shall be but an accessory. And when the code speaks more specially, (1. Div.) the only exceptions it makes to the rule, are, cases in which, the actual perpetrator is an infant under ten, an idiot, a lunatic, the wife of the procurer, his slave, or is some one acting in fear of him. In these cases, it makes the procurer of the crime, stand as its actual perpetrator.

And therefore it may be said, that in these cases, it is he who in law, commits the crime.

It is true, then, that, except in these special cases, if A. procures B. to commit a crime, it is not A. that commits the crime, but B., and A. stands only as B's accessory.

But if this be true, then it must equally be true, that, except in these special cases, if A. *attempts to procure* B. to commit a crime, and fails in the attempt, A. does not attempt himself, to commit the crime.

This is my conclusion.  I know, that there stands opposed to it, a New York case, (4 *Hill*, 136.).

But first, what authority can a New York case be, on the construction of the Penal Code of Georgia.  Secondly, that case is put on the maxim, *qui facit per alium facit per se*, and that maxim does not, as it seems to me, apply to such a case.  It may be true, that who *does* by another, does by himself.  But when A. procures B. to commit a crime, which of the two is it, "*qui facit*," "who *does?*"  It is, in all cases, except the special cases aforesaid, B. and not A.  It is, B. that is the *doer*, and that is *accountable as such ;* and A. is but the accessory.

The maxim it seems to me, can have no place in criminal law, at least none except in the cases aforesaid, in which, B. is an infant under ten ; an idiot, &c.  In every other case, it is B. *qui facit*, not A.  B. in every other case, is a free agent, and has an independent intention of his own to do the act which he does do.  Accordingly, in all law, as far as I know, he ranks as the principal, not as any man's agent.

The request, then, should, I think, have been given in charge by the Court.

I doubt, whether the letter of Richter, and the conversations held in the absence of Griffin, were admissible against Griffin ; but I am not prepared to say, that I think, their admission would, by itself, require the granting of a new trial.