WILLIAM STOKES *v.* STATE OF MISSISSIPPI.

[46 South., 627.]

1. CRIMINAL LAW AND PROCEDURE. *Attempts to commit crime.* *Code* 1906, § 1049.

Under Code 1906, § 1049, providing for the punishment of persons designing and endeavoring to commit an offense and doing an overt act towards its commission but failing or being prevented from committing the same, a defendant is guilty if he attempt to procure another to kill a third party and in furtherance of the purpose carried a loaded gun to the point where it was agreed between them the other person was to be way-laid and killed, although arrested by officers, advised in the premises by the person he was trying to induce to do the shooting, before the intended victim reached the place.

2. SAME. *Impossibility of attempt being successful.* *When not a defense.*

If the commission of a crime be prevented alone by the interference of others, or lack of opportunity, the impossibility of committing it does not excuse an attempt to do so.

3. SAME. *Mere intent not punishable.* *Slight acts in furtherance added thereto are.*

A mere intent to commit a crime is not punishable under the statute, but slight acts in furtherance of the design added to such intent will amount to an attempt to commit crime.

FROM the circuit court of Pike county, Mississippi.

HON. MOYSE H. WILKINSON, Judge.

Stokes, appellant, and another were jointly indicted for an attempt to murder one Wallace Lane. A severance was had, and the appellant tried, convicted, sentenced to the penitentiary for ten years, and appealed to the supreme court.

The opinion of the court states the facts.

*Mixon & Cassidy, J. W. Cassedy,* and *J. B. Holden,* for appellant.

It is apparent that this prosecution is based on Code 1906, § 1049, making it a crime to attempt to commit certain offenses. Our statute law effectually removes all questions which might otherwise, under the common law, exist as to whether or not solicitations and conspiracy to commit offenses are attempts; inasmuch as the statute provides that there must be an overt act coupled with the intent. In consideration of this, the question arises whether or not the acts done by the appellant, as testified to by witnesses for the state, amounted to an overt act within the meaning of the statute. We understand the true rule to be that an overt act is one which tends directly to the execution of the crime, an act done after the preparation had so far advanced and under such circumstances that, if there were no interruption, the result would be the commission of the crime intended. See 1 Wharton Crim. Law (10th ed.), § 181. Preparation must go so far that it would result in crime, unless frustrated by extraneous circumstances. The further rule follows, that there must be a probable object within reach upon which the intended crime can be committed. 1 Wharton Crim. Law (10th ed.), § 186. While the questions involved in this case have not been before this court often, yet the rules mentioned have practically been sanctioned by this court in *Cunningham* v. *State,* 49 Miss., 685, this court (p. 703 of the opinion) stating in regard to attempts that "there should be such a beginning as, if not interrupted, would end in the completion of the act."

As showing our contention that preparation must go so far that, unless interrupted, there would be commission of the intended crime, we refer to the following authorities:

In *State* v. *Young,* 47 L. R. A., 108, the defendant had procured revolvers, chloroform and slippers, and had gone some distance on his way toward a house for the purpose of robbery, when arrested with the articles named in his possession. On appeal, after conviction below, he was discharged, the appellate court holding in effect that the acts committed by him amounted merely to preparation.

In *People* v. *Murray,* 14 Cal., 139, the court held that eloping and sending for a magistrate, etc., amounted only to arranging or devising the means or measures for committing the statutory offense (under the circumstances alleged in the indictment) of attempting to marry illegally, hence the defendant could not be held guilty of attempt to do so.

In *Hicks* v. *Commonwealth,* 6 Va., 223, 19 Am. St. Rep., 891, the defendant, having procured poison and given it to another person with instructions as to how and when it should be administered, for the purpose of killing such person, and being arrested while making the arrangements for the execution of his design, was held not guilty of attempted murder because the acts amounted merely to preparation. See also cases cited in 13 Am. & Eng. Encyc. of Law (1st ed.), 266, 267.

The case at bar presents a good illustration of the soundness of the rule that preparations must have advanced to a point where they directly tend to the commission of the crime. The undisputed evidence is that Lane, the intended victim, did not come by the bridge where the supposed intent was alleged to have been made to kill him. Hence no attempt could have been made on Lane's life. It would have been beyond the pale of possibility for the negro, Robertson, to have even shot at Lane. Hence appellant cannot be held liable. *Lott* v. *State, 83* Miss., 609, 36 South., 11.

It is not contended by the state that appellant himself in-

tended to shoot Lane. Then, can the appellant be guilty of an attempt to murder, when Robertson, the negro whom the state claims was employed by appellant to do the killing, did not intend to shoot? In the case of *State* v. *Douglas,* 44 Kas., 618, a detective had induced the defendant, Douglas, to assist him in placing obstructions on a railroad track for the ostensible purpose of wrecking a train. The court held that even though the defendant assisted the detective, intending to wreck the train and believing that the detective so intended, yet the fact that there was no criminal intent on the part of the detective, the principal, made it impossible for Douglas, the accessory, to be guilty. To the same effect is the case of *Love* v. *People,* 160 Ill., 501. In *People* v. *Collins,* 53 Cal., 185, a third party, after consulting with the defendant, obtained the advice of the sheriff of the county, and acting thereon, entered a house, stole money and divided the same with defendant. Held that the defendant, as accessory, was not guilty, since there was no criminal intent on the part of the principal; and, further, that if the defendant were guilty, then the sheriff, who aided and encouraged the commission of the act, would have also been guilty. In 12 Cyc., 189, d., the rule, deduced from the above and other authorities cited, is stated as follows: "Where an act is not a crime, because of an absence of a criminal intent in the person doing it, one does not thereby become guilty as a principal in the second degree by being present and aiding and abetting it, although he supposes it to be a crime."

Hence, as the negro, Robertson, did not intend to kill Lane, and the appellant did not himself intend to kill Lane, appellant cannot be held guilty of attempting to do what neither alone intended to do.

We do not think that the cases cited by the learned assistant attorney-general are in point.

*George Butler,* assistant attorney-general, for appellee.

The indictment complied with the statute, and was not demurred to by appellant. The proof on the trial conformed to

the indictment. The jury's verdict was amply supported by the evidence which had been properly introduced. Hence the only question here for consideration is, whether or not, in connection with the appellant's design and intent, there were sufficient acts to constitute a technical attempt to murder. These acts were practically as follows: a conspiracy between appellant and Mrs. Lane to kill her husband; the soliciting of the negro, Robertson, by appellant, to do the murder; the arranging of details of the prospective homicide to the most minute details, by appellant; the full explanation by him of the same to the negro; the procuring of a gun by appellant, and his loading it, and explaining again to the negro how and when to shoot from the ambush, and finally his delivery of the loaded gun to the negro immediately prior to his arrest by the officers of the law.

It will be seen that appellant had, at the time of his arrest, done each and every act toward the commission of the ultimate crime, under the scheme as outlined, that it was possible for him to do; and while it may be claimed that the crime was not consummated, yet this was through no fault of appellant.

Learned counsel for appellant contend that appellant's acts never passed beyond mere preparation. The law will not uphold such contention. In *Crowell* v. *Fraternal Ass'n,* 6 N. D., 201, 66 Am. St. Rep., 601, 40 L. R. A., 437, it is said, "It is impossible to formulate a rule which will constitute an unerring guide in assigning to cases which occupy the debatable ground their respective places on one side or the other of the line which separates preparation from legal attempt. The question must needs from its very nature be always difficult of solution. The wisest course for tribunals to pursue with respect to it is to deal with each case as it arises." There are many authorities which hold contrary to the contention of the appellant in the case at bar. There are two lines of authorities in the United States, the one supported by Mr. Bishop, to the effect that certain acts are sufficient to constitute an attempt to commit a crime, the other line supported by Mr. Wharton and

being to the contrary. Mr. Bishop quotes with approval the holding of the court in *People* v. *Bush,* 4 Hill, 135, and criticises the opinion of the court in *Cox* v. *People,* 82 Ill., 191; while Mr. Wharton approves the holding in the *Cox case* and criticises the holding in the *Bush case.*

The rule of the common law as to the criminality of conspiracy, solicitations and attempts, is not affected by our statute-law except as to the punishment and the grade of the offense of the attempt. The statute-law is but declaratory of the common law.

We have here, first, an indictable conspiracy, a substantive crime, yet a species of attempt. 2 Bish. Crim. Law, 191; second, a solicitation, indictable as an attempt. 1 Bish. Crim. Law, 767. Hence there existed two unlawful acts concurring and tending to the final consummation of the ultimate offense.

At the English common law a solicitation to commit either a misdemeanor or a felony was indictable as a misdemeanor, it being a form of attempt. 1 Bish. Crim. Law, 761; *Rex* v. *Higgins,* 2 East, 5; *Rex* v. *Turvey,* Holt, 364; *Reg.* v. *Gregory,* 10 Cox C. C., 459. This doctrine is recognized in many well considered cases in the United States. 1 McClain Crim. Law, p. 186. Some of the different decisions are as follows:

In *State* v. *Avery,* 7 Conn., 266, 18 Am. Dec., 105, defendant wrote a letter to Mrs. White soliciting her to commit adultery. It was there held that the solicitation was indictable as an attempt and that the solicitation was the act done, the intent existing, toward the commission of the ultimate offense.

In *People* v. *Bush,* 4 Hill, 135, quoted with approval in *Cunningham* v. *State,* 49 Miss., 703, it is held that the mere solicitation to commit a felony is an offense, whether the felony be committed or not.

In *Griffin* v. *State,* 26 Ga., 493, it was held that soliciting another to commit robbery is indictable as an attempt.

In *Commonwealth* v. *Randolph,* 144 Penn. St., 83, it was held that a solicitation to commit murder, accompanied by an

offer of money as a reward for its commission, was indictable at common law as an attempt. To the same effect, see *Commonwealth* v. *Flagg,* 135 Mass., 545.

The theory upon which all of these decisions proceed is, as clearly expressed in *Rex* v. *Higgins, supra,* that the solicitation is itself an act toward the commission of the crime solicited to be committed; for upon no other theory could they be held to be crimes of any degree. See 9 Am. Crim. Rep., 688; 3 L. R. A., 767; 1 McClain Crim. Law, 186.

It is not necessary to determine here whether a bare solicitation constitutes an attempt under the statute, because the evidence shows more than a bare solicitation, something more than mere preparation, namely, conspiracy, offer of money reward to the negro agent, full instructions to him as to when and how to shoot, the procuring of a gun for such purpose and a going to the designated ambush for the supposed perpetration, by the negro, of the crime of murder. Furthermore, at such place there was the delivery of the gun to the negro.

In the case of *People* v. *Bush, supra,* soliciting the burning of a barn, accompanied by the offer of a money reward and by delivery of matches for such purpose, constituted an attempt at arson.

In the case of *McDermott* v. *People,* 5 Park. Crim. Rep., 102, it was held that preparing materials for the commission of the crime of arson, followed by a solicitation and an attempt to carry out the agreed plan was an attempt at arson.

In *Collins* v. *State,* 3 Heisk., 14, procuring poison and giving it to a child with instructions to place it where it would in all probability kill a third person, constituted an attempt to murder.

In *State* v. *Bowers,* 15 L. R. A., 199, it was held that an attempt to commit a felony was made by the defendant's soliciting another person to set fire to the dwelling house of a third person, where defendant also gave such other person matches

and offered him a reward; although it appeared that the matches were not used for such purpose and the reward was rejected.

In addition to the foregoing cases, we cite the following as upholding the state's contention in this case: *People* v. *Sullivan,* 173 N. Y., 122, 93 Am. St. Rep., 582; *People* v. *Lawton,* 56 Barb., 126; *Griffin* v. *State,* 26 Ga., 493; *People* v. *Stites,* 75 Cal., 570; 1 Bish. Crim. Law, 746 (criticising *People* v. *Murray,* 14 Cal., 159).

This court, in *Cunningham* v. *State,* 49 Miss., 685, a case of attempt to commit robbery, quoted with approval the holding of the New York court in the *Bush case, supra,* and the *Griffin case, supra.* Applying these principles to the case at bar, it is impossible logically to reach any other conclusion than that a sufficiently overt act was made by appellant here to carry the matter within the clear scope of an attempt to commit murder under the language of our statute.

An overt act is one which manifests the intention of the actor to commit the crime. 2 Bouvier Law Dict., 267. An attempt may be immediate, as, for instance, an assault; but very commonly it may be remote or indirect. *People* v. *Bush, supra.* The taking of the impression of the key of a store-house, with intent subsequently to enter and wrongfully remove the owner's goods, is an attempt to commit larceny, even though the act of taking be not consummated. 3 Wharton Crim. Law, § 2797.

*People* v. *Gardner,* 43 Am. St. Rep., 741; *State* v. *Mitchell,* 94 Am. St. Rep., 769 (note); *People* v. *Moran,* 20 Am. St. Rep., 742; *Commonwealth* v. *Tolman,* 3 L. R. A., 747; *People* v. *Moran,* 10 L. R. A., 109; *State* v. *Bowers,* 15 L. R. A., 199; *State* v. *Butler,* 25 L. R. A., 434; *State* v. *Hurley,* 6 L. R. A. (N. S.), 804; *Stabler* v. *Commonwealth,* 40 Am. St. Rep., 656; *State* v. *Butler,* 9 Am. Crim. Rep., 668.

Argued orally by *J. J. Cassidy,* for appellant and by *George Butler,* assistant attorney general, for appellee.

MAYES, J., delivered the opinion of the court.

William Stokes and Cora Lane were jointly indicted for an attempt to kill and murder one Wallace Lane, the husband of Cora Lane. The testimony shows that the relations existing between Cora Lane and Will Stokes were of a very friendly nature, so much so that he spent much time in and about the Lane residence. The motive for the killing, it seems, was both to get rid of Lane and also make it possible to realize on certain policies of life insurance which Lane was carrying for the benefit of his wife. This is the state's testimony on this subject.

The facts which the state claims constituted the attempt are as follows: Stokes and Mrs. Lane undertook to hire one Shorty Robertson to do the killing. Shorty Robertson was a negro, and it was agreed that he would do the killing on a certain night, when it was believed that Lane would be coming home from a lodge meeting. It was agreed to pay Robertson $1,000, $600 of which was to be in cash, and $400 after the killing should take place. After this proposition had been made to Robertson, he (Robertson) informed certain officers about it, and told them of the conversation had with Stokes and Mrs. Lane, and posted them as to the night when, the hour at which, and the place where it was understood that he should go for the purpose of stationing himself for the purpose of killing Wallace Lane. About dark, on the night when it was agreed that Robertson should do the killing, the officers went to the place, secreted themselves, and there awaited developments. Robertson went to the house of Mrs. Lane, where he found Stokes, and together they proceeded to the place where it was understood that Robertson was to lie in wait for the purpose of killing Lane. Stokes procured a loaded gun and went with the negro for the purpose, as he (Robertson) states, of properly placing him at the point where he was to do the killing. They arrived there a little after dark on a rainy night, and, just as Stokes was in the act of handing the gun to Robertson, were arrested by the officers, who had preceded them.

It is not shown in the testimony that any money was ever paid to Robertson as promised, nor is it shown that Lane came by the place where the killing was to occur on the night in question. Stokes admits that he was there with the gun, but denies that he went there for any such purpose as is testified to by Robertson. He asserts that the negro had promised him to help catch some parties that had been stealing, and he started out with him to look up and arrest them. Stokes denies that he had any intention of killing Lane, or that he ever attempted to hire Robertson to do so. These facts, together with all proof offered by Stokes, were submitted to the jury, however; and they found that he had gone there on the mission testified to by the negro, and convicted him of the attempt to kill and murder as charged in the indictment. A severance was asked for and granted, and Stokes was tried and convicted.

The only question in the case is: Do the facts constitute an attempt, within the meaning of Code 1906, § 1049? This section is as follows:

"Every person who shall design and endeavor to commit an offense, and shall do any overt act towards the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows: If the offense attempted to be committed be capital, such offense shall be punished by imprisonment in the penitentiary not exceeding ten years; if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted."

It is useless to undertake to reconcile the authorities on the subject of what constitutes an attempt, or what is an overt act, within the meaning of the section in question. It is equally impossible for us to undertake to lay down any rule on this subject

which would serve as a guide in all future cases. To a very great extent each and every case must stand on its own facts. The text-books and decisions are noted for their lack of harmony. It is impossible to decide any case on this subject without doing violence to some author or some adjudicated case. Therefore all we can hope to do is to follow the best authorities and to clear up the subject as best we can, so far as the laws of this state are concerned.

Where a party is indicted for an attempt to murder by shooting with a gun, at what time shall it be said that such party has committed an overt act? Is it necessary, in order to convict, that a party shall be allowed to proceed to do all towards the accomplishment of his crime, except actually to pull the trigger? If not, then when may it be said that an overt act has been committed? When it is proved that a party has the design to kill and has the means to accomplish that design, shall it be held that no crime is committed unless that design is frustrated at the very instant it is attempted to be carried out? Must the citizen be required to imperil his existence up to the time of the actual menace before he can claim the protection of the law and procure the punishment of the offender? The mere buying of the gun would be preparation, and not attempt. The mere buying of a gun and loading it might not constitute an attempt. But when the facts show, in furtherance of the design, that a gun has been procured and loaded, and the party so procuring and loading the gun has armed himself and started out on his mission to kill, but is prevented from carrying out his design by such extraneous circumstances as that the party he intends to kill does not come to the point where he expected to carry out his design, or if the party designing to kill is arrested and prevented from carrying out the design, he is clearly guilty of the attempt. When Stokes attempted to procure Robertson to perpetrate this crime, and in furtherance of this purpose took the gun, loaded it, and started with him to the point where the killing was to occur, the act was an act done tending to effect

the commission of the crime, within the meaning of Code 1906, § 1049, and was an attempt. In this stage it had proceeded beyond mere preparation or intent, and was an actual step taken towards the commission of the crime. If the jury believed, as they did believe, that the starting out with the gun was for the purpose of stationing the negro at a point where he could do the killing and was in furtherance of the design to kill Lane, this was an act done, and defendant was properly convicted. The public welfare and peace are better subserved, and the lives of citizens better protected, by the holding that these acts constitute criminal attempt, as in fact they do, than would any attempted refinement of the law which would result in a contrary view. In McClain on Criminal Law, § 226, it is held: "Where there is the intent to commit, and an act is done tending to effect the commission thereof, the attempt is punishable, although by reason of extraneous circumstances the actual commission of the crime is impossible."

In many states it is held that the mere solicitation of a person to commit a crime is in itself an attempt, whether the person solicited agree to commit the crime or not. It is not necessary for us to decide this question, and we do not do so, since this case progressed beyond mere solicitation. The record in this case fully warrants the conclusion that there was an act done towards the commission of the crime, within the meaning and purpose of the law, and for the peace and protection of society. At last, it is the safety of the public and their protection which is to be guarded. All criminal laws have this as their aim. While a person cannot be punished for mere intent to do a crime, surely, when that intent has so far manifested itself as to cause the party to take his gun and go out on a search for the intended victim, being prevented by arrest or other extraneous circumstance from effecting his purpose, such act constitutes an attempt. We are now concerned only with what facts constitute an attempt. We have no concern at this time with those things which fall short of constituting an at-

tempt. All the authorities hold, that, in order to constitute an attempt, the act attempted must be a possibility; and counsel for appellant argue from this that the appellant could not have committed this crime at the time he was arrested, because Lane was not even there, and therefore, they say, no conviction could be had. It was no fault of Stokes that the crime was not committed. He had the gun, and the testimony warrants the conclusion that it had been taken for the purpose of killing Lane. It only became impossible by reason of the extraneous circumstance that Lane did not go that way, and, further, that defendant was arrested and prevented from committing the murder. This rule of the law has application only to a case where it is inherently impossible to commit the crime. It has no application to a case where it becomes impossible for the crime to be committed, either by outside interference or because of miscalculation as to a supposed opportunity to commit the crime which fails to materialize; in short, it has no application to the case when the impossibility grows out of extraneous facts not within the control of the party. In the case of *Cunningham* v. *State,* 49 Miss., 685, the court says (on page 701): "This doctrine of attempt to commit a substantive crime is one of the most important, and at the same time most intricate, titles of the criminal law. It is truly remarked by Mr. Bishop in his valuable work on Criminal Law that there is no title, indeed, less understood by the courts, or more obscure in the text-books, than that of attempts. There must be an attempt to commit a crime, and an act toward its consummation. So long as an act rests on bare intention, it is not punishable; but, immediately when an act is done, the law judges, not only of the act done, but of the intent with which it was done, and if accompanied with an unlawful and malicious intent, though the act itself would otherwise have been innocent, the intent being criminal, the act becomes criminal and punishable."

When the intent to commit crime exists, or, to put it more accurately, when the only proof is that it is merely the declared

intention of a person to commit a crime, with no act done in furtherance of the intent, however clearly may be proved this intention, it does not amount to an attempt, and it cannot be punished as such. But, whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common-sense administration of the law with subleties as to what constitutes preparation and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worst sense. We can see no application of the decision of *Lott* v. *State,* 83 Miss., 609, 36 South., 11, to the facts of this case. *People* v. *Moran,* 20 Am. St. Rep., 723, and notes; 1 McClain's Crim. Law, 226; *Slate* v. *Avery,* 7 Conn., 266, 18 Am. Dec. 105; *People* v. *Bush,* 4 Hill (N. Y.), 133; *People* v. *Sullivan,* 173 N. Y., 122, 65 N. E., 989, 63 L. R. A., 353, 93 Am. St. Rep., 582.

*Affirmed.*