John W. JONES, Appellant,

v.

UNITED STATES, Appellee.

John W. BRYANT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10041, 10049.

District of Columbia Court of Appeals.

Argued Oct. 19, 1977.

Decided April 27, 1978.

John W. Jones, pro se, submitted on the briefs.

John W. Sansing, Washington, D. C., appointed by this court, for appellant Bryant.

Joel S. Perwin,* Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Percy H. Russell, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Robert Fabrikant, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

---

\* The government presented oral argument in appellant Bryant's case only. Appellant Jones, pro se, presented no oral argument. As to his case, the government necessarily submitted on the briefs. *See Elchuk v. United States,* 370 U.S. 722, 82 S.Ct. 1574, 8 L.Ed.2d 802 (1962).

YEAGLEY, Associate Judge:

These consolidated appeals grow out of an attempted robbery of the Columbia Federal Savings and Loan Association at 2000 L Street, N. W., on September 20, 1974, which resulted in the killing of Metropolitan Policewoman Gail Cobb. Stated briefly, appellants and their codefendants set out, heavily armed on the morning of September 20 to commit a bank robbery which they had planned carefully over a period of several days. The leader of this group was John Dortch, who was to enter the bank with appellants, disarm the security guard and approach the main vault while appellant Jones watched the tellers and removed cash from their windows. Plans called for appellant Bryant to confront and control entering customers. Nathaniel Fitzhugh was to wait outside to drive the participants from the scene of the robbery.

Sometime between 10 o'clock and 10:45 on the morning of September 20, the conspirators approached the target bank. Dortch and appellant Bryant were in one car and proceeded to 21st Street near L Street, N. W., where they parked as planned. Appellant Jones and Fitzhugh went in separate cars. Appellant Jones parked his car in a lot about four blocks from the bank and then joined Fitzhugh in the other vehicle. Together they were to drive to the Townhouse store near the bank on L Street, where they were to meet Dortch and Bryant.

Police Sergeants Jurgen Bailey and William P. Tinsley, driving south on 21st Street in a marked police cruiser, observed Dortch as he walked from his car, carrying a small satchel from which protruded a suspicious object wrapped in a towel. Bailey, still seated in the cruiser, asked Dortch what was in the bag. Dortch approached the police car, removed a shotgun from the bag, and put it within inches of Bailey's face while he threatened the sergeant. Bailey grabbed the gun by the barrel, pointing it away from himself as the weapon discharged. In the course of an ensuing struggle, Sergeant Tinsley exited the cruiser and

fired as both Dortch and appellant Bryant fled. Tinsley pursued the subjects to an alley, and ducked to avoid being hit as Dortch spun around and fired his shotgun at him. Dortch and appellant Bryant separated at this point.

At approximately 10:50 that morning, a passerby informed Officer Gail Cobb, who was standing on the south side of L Street, that a man whom he had seen running from police had walked down the ramp of an underground garage across the street. Carson Wooten, who worked at the garage at 1917 L Street, N. W., motioned Officer Cobb toward the man, appellant Bryant. The officer encountered the subject and ordered him to put his hands against the wall while she attempted to radio for assistance. Appellant Bryant slowly lowered his right hand to his belt and suddenly pulled a gun, turned, and fired at the officer, who would be pronounced dead shortly thereafter. Appellant Bryant was soon apprehended by police in the parking lot.

Appellant Jones, meanwhile, never reached the scene of these unexpected confrontations. As he and Fitzhugh approached the bank to meet Dortch and appellant Bryant they heard sirens and saw police cars, and decided to leave the area.

Following a lengthy investigation, appellants and codefendants were indicted on April 3, 1975,[1] and on July 11, 1975, following a four-week trial before a sequestered jury, appellant Bryant was found guilty of second-degree murder, attempted armed robbery, conspiracy, and two counts of assault with a deadly weapon (one count for assault on Sergeant Tinsley, one count for assault on Sergeant Bailey). Appellant Jones was convicted of attempted armed robbery, conspiracy, and two counts of assault with a deadly weapon (one count each for Tinsley and Bailey).

On September 19, 1975, the court sentenced appellant Bryant to concurrent terms of 15 years to life for the murder and attempted armed robbery offenses, 20 to 60 months for conspiracy, and 3 to 9 years for

---

1. All but Bryant and Jones pleaded guilty at various stages of the proceedings.

one count of assault with a dangerous weapon. He received a consecutive sentence of 3 to 9 years for the second assault conviction.

Appellant Jones received concurrent terms of 15 to 45 years for attempted armed robbery, 20 to 60 months for conspiracy, and 1 to 3 years for assault with a dangerous weapon. He received a consecutive sentence of 1 to 3 years for the second assault conviction.

We have examined the numerous arguments raised on appeal, and for the reasons which follow, we find none to have merit.

## I.

■ Appellant Bryant contends that the trial court erred in denying admission of psychiatric evidence offered to negate the specific mental state required for commission of second-degree murder. Specifically, appellant Bryant asserts that his proffered and excluded evidence would have established that he suffered severe mental limitations when facing a panic situation, such as his fateful altercation with Policewoman Cobb, and that he could not have formed the intent necessary for second-degree murder. He urges that we follow *United States v. Brawner,* 153 U.S.App.D.C. 1, 471 F.2d 969 (1972) (en banc), in recognizing the defense of diminished responsibility. We have specifically declined in the past to follow *Brawner* and to recognize that defense. *Bethea v. United States,* D.C.App., 365 A.2d 64 (1976). We thus reject appellant's contention.

## II.

■ Appellants Bryant and Jones each contend that the trial judge erred in denying their motions for judgment of acquittal on attempted armed robbery because they and their colleagues never crossed the line from preparation to attempt. In reviewing this contention we must view the evidence in a light most favorable to the government, *Saunders v. United States,* D.C.App., 317 A.2d 867, 868 (1974), and will reverse only if we decide that a reasonable jury must fail to find guilt beyond a reasonable doubt. *Womack v. United States,* D.C. App., 350 A.2d 381, 384 (1976). We find no error in the submission of this issue to the jury, and affirm.

The difficulty which courts have faced in fashioning a definition of attempt, and particularly in drawing a satisfactory line between preparation and attempt [2] makes this an especially appropriate question for jury resolution. In the instant case, the jury was given Criminal Jury Instructions for the District of Columbia, No. 4.04 (2d ed. 1972):

An attempt consists of an act which is done with the intent to commit a particular crime and is reasonably adapted to the accomplishment of that end. The act must go beyond mere preparation and must carry the criminal venture forward to within dangerous proximity of the criminal end sought to be attained.

This "dangerous proximity" test, formulated by Justice Holmes,[3] does not require that appellants have commenced the last act sufficient to produce the crime but focuses instead on the proximity of appellants' behavior to the crime intended.

■ In the instant case appellants had made careful plans as to the role of each in the robbery, including the nature of each of their disguises, and had conducted a dry run on the preceding day. At the appointed hour they launched their plans, going their respective ways toward the location of the

---

2. We have recognized in the few cases in which we have addressed the question that "[m]ere preparation is not an attempt, but preparation may progress to the point of attempt. Whether it has is a question of degree which can only be resolved on the basis of the facts in each individual case." *Walker v. United States,* D.C. App., 248 A.2d 187, 188 (1968), *citing Sellers v. United States,* D.C.Mun.App., 131 A.2d 300,

301 (1957). *See also Williams v. United States,* D.C.App., 283 A.2d 212, 213 (1971); *United States v. Coplon,* 185 F.2d 629, 633 (2d Cir. 1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952).

3. *See Commonwealth v. Peaslee,* 177 Mass. 267, 59 N.E. 55 (1901); *Commonwealth v. Kennedy,* 170 Mass. 18, 48 N.E. 770 (1897).

bank in three cars. They were armed with shotguns and other weapons as they entered a busy downtown area in the middle of a business day, and had disguised themselves as construction workers. Appellant Bryant was approaching the target bank and was but a block away when the police intervened. At this time, appellant Jones was proceeding toward the bank according to plan and was no further than four blocks away, turning back only when he heard police sirens and concluded that something had gone wrong. On these facts, a reasonable jury could find that appellants had gone beyond mere preparation and were within dangerous proximity of the criminal end sought to be attained. Indeed, the instant situation is similar to that presented in *Stokes v. State*, 92 Miss. 415, 46 So. 627 (1908). In that case, appellant had hired a man named Robertson to kill Lane, the husband of appellant's girl friend. Robertson informed the police, who arrested appellant as he handed a gun to Robertson to carry out the crime. Appellant's conviction for attempt to murder, under a Mississippi statute which required for conviction of attempt the commission of an overt act in furtherance of the crime, was affirmed:

> When it is proved that a party has the design to kill and has the means to accomplish that design, shall it be held that no crime is committed unless that design is frustrated at the very instant it is attempted to be carried out? Must the citizen be required to imperil his existence up to the time of the actual menace before he can claim the protection of the law and procure the punishment of the offender? The mere buying of the gun would be preparation, and not attempt. The mere buying of a gun and loading it

might not constitute an attempt. But when the facts show, in furtherance of the design, that a gun has been procured and loaded, and the party so procuring and loading the gun has armed himself and started out on his mission to kill, but is prevented from carrying out his design by such extraneous circumstance as that the party he intends to kill does not come to the point where he expected to carry out his design, or if the party designing to kill is arrested and prevented from carrying out the design, he is clearly guilty of the attempt. [*Id.* 46 So. at 628.]

We will not disturb the jury's finding.[4]

### III.

■ Appellant Bryant contends that the evidence was insufficient to support his conviction for assault with a dangerous weapon against Sergeant Tinsley. He asserts that no evidence was introduced to establish that he utilized a weapon against Tinsley in the course of the alley shootout, and that his conviction on this charge must rest, therefore, on his relationship as a co-conspirator of, or an aider and abettor to, John Dortch. He asserts further that no evidence was introduced that Dortch committed the assault against Tinsley, and that, in any event, there was no evidence that appellant Bryant aided and abetted Dortch. He maintains lastly that the flight during which this altercation occurred was outside the scope of the conspiracy.

We begin this analysis with a determination that a jury could reasonably find that John Dortch's conduct amounted to an assault against Sergeant Tinsley. Tinsley's testimony established that as he pursued Dortch through the alley, the subject

4. Appellant Jones contends that in any event, his attempted robbery conviction should be vacated because his acquittal on the felony murder charge is not logically consistent with it. He asserts that acquittal for felony murder suggests that the jury rejected both crimes—conspiracy and actual participation in the attempt—on which the government sought to predicate a felony murder conviction.

This contention cannot be sustained. The instant verdict may be construed to indicate that the jury found appellant Jones guilty of both the conspiracy and attempted armed robbery counts but determined that appellant Bryant's killing of Officer Cobb was neither within the scope of the conspiracy nor within the course of the attempted robbery, and was thus not imputable to appellant Jones. Moreover, we have held that the jury's verdict need not be logically consistent, but need only be supported by sufficient evidence. *Steadman v. United States*, D.C.App., 358 A.2d 329, 332 (1976).

turned and fired a shot at him. Tinsley dropped to the ground to avoid being hit.

The trial court instructed the jury that assault is "an attempt or an effort with force or violence to do injury to the person of another, coupled with the apparent present ability to carry out such an attempt or effort." *See* Criminal Jury Instructions for the District of Columbia, No. 4.11 (2d ed. 1972). Appellant does not quarrel with this definition and indeed we have approved it. *Anthony v. United States*, D.C.App., 361 A.2d 202 (1976).

The jury could reasonably have found that the instruction embraced Dortch's conduct in this case, and could have coupled this determination with any one of four theories to find appellant Bryant culpable for Dortch's assaultive conduct.

First, the jury could reasonably find that this assault was a natural and probable consequence of the attempted robbery, *see United States v. Jones*, 170 U.S.App.D.C. 362, 367, 517 F.2d 176, 181 (1975); *United States v. Heinlein*, 160 U.S.App.D.C. 157, 167, 490 F.2d 725, 735 (1973), or that appellant Bryant's participation in the chain of events leading up to this incident warranted holding him responsible for the outcome. *United States v. Greer*, 467 F.2d 1064, 1069 (7th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973).

Second, the jury could reasonably find that this assault took place during appellant Bryant's and Dortch's escape from their assault on Sergeant Bailey. We note that appellant Bryant does not challenge his conviction for that assault.

Third, the jury could reasonably find that appellant Bryant actively aided and abetted Dortch in the escape attempt following the altercation with Bailey, and was thus equally responsible for the attendant assault by Dortch on Tinsley. *See* D.C.Code 1973, § 22–105.

This court has recognized as probative to a finding of aiding and abetting the existence of a prior conspiracy, such as existed in the instant case. In *Corbin v. United States*, D.C.App., 237 A.2d 466 (1968), we affirmed the assault and petit larceny conviction of an appellant who asserted that he had merely been present at the scene of the crime. We said:

Assuming the truth of this evidence and giving the Government the benefit of all legitimate inferences to be drawn therefrom, there was ample basis for the court to find a prior relationship or conspiracy between appellant and the principal offender and to establish a prima facie case of aiding and abetting the assault and petit larceny. [*Id.* at 467. *See also Rogers v. United States*, D.C.Mun.App., 174 A.2d 356, 358 (1961).]

Moreover, in the instant case, appellant Bryant testified that in the course of the initial encounter with the officers, he fired a shot in the air to aid Dortch.

Finally, the jury could have inferred from the facts of this case that the escape attempt of Dortch and Bryant was an inherent element of the crime they intended. It could thus have been viewed as an object of the conspiracy, within its scope, with the result that any crime committed in its course was imputable to all coconspirators. *See People v. Allen*, 56 Ill.2d 536, 309 N.E.2d 544, *cert. denied*, 419 U.S. 865, 95 S.Ct. 120, 42 L.Ed.2d 102 (1974); *Johnson v. State*, 252 Ark. 1113, 482 S.W.2d 600 (1972); *People v. Golson*, 32 Ill.2d 398, 207 N.E.2d 68 (1965), *cert. denied*, 384 U.S. 1021, 86 S.Ct. 1951, 16 L.Ed.2d 1026 (1966).

We find also no basis for appellant Jones' challenge to the sufficiency of his convictions for assaults with a dangerous weapon on Sergeants Bailey and Tinsley. In this connection, we first reject his challenge to the sufficiency of his conspiracy conviction under D.C.Code 1973, § 22–105a. That provision requires that two or more persons conspire to commit a criminal offense, and that one of the conspirators commit an overt act pursuant to the conspiracy to effect its purpose. The evidence in this case, as detailed, *supra,* was fully compatible with conviction under this provision, and permitting a jury to so find was not error, plain or otherwise. Similarly, we find that a reasonable jury could infer from

the same facts that the assaults with which appellant Jones was charged were perpetrated in the course of this conspiracy, and we will not disturb this finding.[5]

## IV.

Appellant Jones contends, for the first time on appeal, that the trial court denied him his Sixth Amendment right to compulsory process by accepting a plea bargain proposed on the third day of trial by counsel for three of his codefendants. The bargain was motivated by the government's fear that the three pleading codefendants might give exculpatory testimony of a perjurious nature. The pleading codefendants represented that they would resist any subpoena to testify on behalf of the remaining defendants, Bryant and Jones, by asserting their right against self-incrimination, which was extant until their convictions became final.[6]

Appellant relies on two cases to support his contention of constitutional error in the trial court's acceptance of this bargain. In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court held that the Sixth Amendment right to compulsory process was applicable to the states through the Fourteenth Amendment, and held further that a state rule disqualifying an alleged accomplice from testifying on petitioner's behalf denied petitioner this newly incorporated right.

In *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), the Court held as violative of due process the threatening statements of a trial judge which unquestionably discouraged a prospective witness from testifying on petitioner's behalf.

■ The instant case is not controlled by *Washington* and *Webb* because it deals with prospective witnesses who themselves proposed and chose not to testify, in a situation in which the Fifth Amendment would have permitted them such a choice had they been called to the witness stand. We have here neither the disqualification from testifying by state law nor the compelling discouragement of an overzealous trial judge. Moreover, appellant Jones, represented by counsel, was present on June 16, 1975, when discussion of the plea bargain was initiated before the trial court. Although the record reflects his absence from court when that part of the bargain relating to future testimony was struck, his failure to object, after having learned of it, and his failure to indicate that he wanted to call as witnesses any of his pleading codefendants mean we will reverse only if the trial court's acceptance of the bargain was plain error affecting substantial rights. *Watts v. United States,* D.C.App., 362 A.2d 706, 708–09 (1976) (en banc); *Adams v. United States,* D.C.App., 302 A.2d 232, 234 (1973).

■ We have said that appellant Jones did nothing to indicate his intention to call these witnesses. He issued no subpoenas for them, and did not move to sever his trial from theirs. On appeal, he fails to proffer the substance of favorable testimony of which he asserts he was unconstitutionally deprived. Viewing this in connection with what we have already observed was the Fifth Amendment right of these

---

5. Appellant Jones also contends, for the first time on appeal, that the trial court erred in permitting the jury to hear and construe as evidence against him testimony concerning the defendants who had entered guilty pleas. This contention is patently without merit. Because appellant Jones was charged with conspiracy, evidence concerning the actions of his coconspirators was relevant and admissible on the question of appellant Jones' culpability, and admission of such evidence was not error, plain or otherwise.

6. The following stipulation was made a part of the plea bargain:

> THE COURT: Do I further understand that each of you will resist any compulsory process by law, and subpoena, by exercising whatever rights may be available to you, any subpoena from any of the remaining defendants in this case in order that you will not make yourselves available to exonerate any of the remaining defendants in this case, and that you will do your utmost, that which is within your power, to prevent yourselves from testifying on behalf of any of the defendants in this case. Is that your agreement and understanding that this is part of this plea bargaining process?
> [There was an affirmative response.]

prospective witnesses not to testify, it compels the conclusion that on these facts, an assignment of plain error cannot be sustained.[7]

### V.

 Appellant Jones also contends that he was denied the effective assistance of trial counsel. He asserts that counsel failed to present a coherent defense, to confer sufficiently with his client, to make requisite pretrial motions or investigations, and to prepare adequately for oral argument.

We have recognized that "an attack upon trial counsel is not a device to be used on appeal except in the most severe cases of glaring ineptitude." *Angarano v. United States,* D.C.App., 312 A.2d 295, 300 (1973). In *Angarano,* we declared that a prima facie case of ineptitude could be based only on a highly particularized showing. *Id.* at 301. Appellant Jones' brief fails to make such a showing, and requires the kind of speculation in which, we have asserted, we will not engage. *See Atkinson v. United States,* D.C.App., 366 A.2d 450, 453 (1976). Moreover, although evidence of his complicity was strong, we note that appellant Jones was acquitted of seven of the eleven charges against him. We find his contention of ineffective assistance of counsel to be entirely without merit.

Equally without merit is appellant Jones' contention that the trial court committed reversible error in denying his motion for a change of venue, and in denying his related motion to strike the jury panel. He maintains that widespread pretrial publicity surrounding the death of Policewoman Cobb, a Washington, D.C. native and the first policewoman in the United States to be killed in the line of duty, made a fair trial in this jurisdiction impossible.

The Supreme Court has recognized that a showing of pervasive adverse pretrial publicity does not lead inevitably to an unfair trial. *Nebraska Press Association v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

 The trial court is accorded wide discretion in judging the extent and impact of pretrial publicity, *United States v. Chapin,* 169 U.S.App.D.C. 303, 316, 515 F.2d 1274, 1287, *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). The record in this case reflects that the trial court was painstakingly careful to filter out potential prejudice in the course of voir dire. Moreover, appellant's allegations of prejudice are unparticularized and unsubstantiated. He thus does not fulfill his burden of proof on this question, *see Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). We hold that appellant Jones failed to demonstrate that he did not receive a fair trial on these charges.

 Finally, appellant Jones challenges the sufficiency of evidence of his intent to commit any of the offenses for which he was convicted. Application of the facts adduced at trial to the legal standard by which our review is governed affords no basis on which to sustain this challenge.

Accordingly, the convictions appealed from are hereby

*Affirmed.*

---

7. There is no question that the government's use of a plea bargain in order to induce or encourage a witness' silence cannot be tolerated. *United States v. Bell,* 165 U.S.App.D.C. 146, 161–63, 506 F.2d 207, 222–24 (1974). *See also Alston v. United States,* D.C.App., 383 A.2d 307 at 314 n. 10 (1978); *In re J.W.Y.,* D.C.App., 363 A.2d 674, 683 (1976). A court's acceptance of this sort of a plea knowing its purpose is, of course, similarly improper. While the facts of the instant case neither fall directly within this proscription nor compel reversal, we hasten nevertheless to express our disapproval of the trial court's participation in the plea bargain challenged here.