No. 33,541

The State of Kansas, *Appellee*, v. R. C. Ainsworth, *Appellant*.

(72 P. 2d 962)

Opinion filed November 6, 1937.

*Dennis Madden,* of Topeka, for the appellant.

*Clarence V. Beck,* attorney general, and *Paul L. Harvey,* county attorney, for the appellee.

The opinion of the court was delivered by

Allen, J.: This is an appeal from a judgment of the district court under which the defendant was sentenced to serve one year in the county jail.

The charging part of the information is as follows:

"That R. C. Ainsworth at the county of Shawnee in the state of Kansas and within the jurisdiction of this court on the —— day of December, A. D. 1936. did unlawfully, feloniously and willfully and with intent to cheat and defraud the Hotel Kansan Operating Company, a corporation, organized and existing and operating under the laws of the state of Kansas, designedly by means of a trick and deception, and false and fraudulent representation, statement and pretense, attempt to obtain from the said, the Kansan Operating Company, a corporation, $185 lawful money of the United States of America, said trick and deception and false and fraudulent representation and pretense being as follows:

"Said R. C. Ainsworth, at the time and place above stated, did call by telephone the agent of the said the Hotel Kansan Operating Company, a corporation, and represented to the said agent that there was en route to the said Hotel Kansan, a party of four persons from Edmonton, Alberta, Canada, by airplane, when in truth and in fact there was no such party. Said defendant at said time and place did go to the said hotel and sign the following names, occupations and residences on the register of said hotel: C. C. Kearns, chief pilot, Edmonton, Alberta; R. H. Leesbond and wife, Edmonton, Alberta; J. C. Reamey and wife, Edmonton, Alberta, and did represent to said agent at said hotel that the persons above named would be in the hotel in a short time, when in truth and in fact there were no such persons, and the said defendant did at the time and place first above mentioned, request the agent of said

hotel to cash for him checks in the amount of $185, which checks were spurious and of no value, and which said agent refused to cash. Contrary to the statute in such cases made and provided and against the peace and dignity of the state of Kansas."

On April 14, 1937, a motion to quash the information on the ground that the information did not charge a public offense was overruled. The record shows that on April 15, 1937, the defendant appeared in person and by his attorneys, waived arraignment and entered his voluntary plea of guilty. On April 17, 1937, it was ordered and adjudged that the defendant be sentenced to the county jail.

It is urged that the information does not charge a crime and that the judgment and sentence are void.

In charging the attempt to commit the offense, the information follows the language of the statute, G. S. 1935, 21-551 (since amended), which is the approved method of charging the crime of an attempt. (In re Schurman, Petitioner, 40 Kan. 533, 541, 20 Pac. 277.) Under our statute G. S. 1935, 21-101, an attempt to commit a crime is itself criminal, though the attempt fails. (In re Lloyd, 51 Kan. 501, 33 Pac. 307.)

In "Criminal Attempts," by Beale, 16 Harvard Law Review 491, it was said:

"In order to constitute an act of attempt, the act must possess four characteristics: first, it must be a step toward a punishable offense; second, it must be apparently (but not necessarily in reality) adapted to the purpose intended; third, it must come dangerously near to success; fourth, it must not succeed.

. . . . . . . . . . .

"The attempt must come sufficiently near completion to be of public concern. How near to success the attempt must come is obviously a question of degree to be determined in each case upon the special facts of the case. Attempts have been made to find a legal test to satisfy this question. It has been suggested, for instance, that to be punishable an attempt must be the last act before success; there must remain no locus poenitentiae. But while such a formula may sometimes furnish a useful suggestion for determining the question, it cannot properly be regarded as a legal rule. As Holmes, C. J., said, in Commonwealth v. Peaslee (177 Mass. 267, 59 N. E. 55):

"'That an overt act, although coupled with an intent to commit the crime, commonly is not punishable if further acts are contemplated as needful, is expressed in the familiar rule that preparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor, although there is still a locus poenitentiae, in the need of a further exertion of the will to complete the crime.'

"In fact, literal adherence to the rule suggested would probably prevent punishment in most cases charged as attempts, since the final act before complete success will seldom be accomplished without success following. Most decided cases of attempt, it will be found, are far from being the last acts before complete success." (pp. 492, 501.)

Preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made. (*People v. Murray,* 14 Cal. 159.)

Our statute G. S. 1935, 21-101, provides that "every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense," etc., shall be punished in the manner prescribed. By pleading guilty, the defendant admitted the truth of allegations in the information. In the crime of obtaining money by false pretense, the making of the pretense is itself a material ingredient of the offense. In this case the representation that the party of persons was coming from Canada by airplane was not only a false statement but was one naturally calculated to build up the appellant in the eyes of the hotel clerk as being a person of importance and having a connection with an undertaking of some moment. When he signed the fictitious names on the hotel register, the giving of the fictitious names in itself, under the authority cited by appellant, might not be such a false representation as to make him liable criminally, but when he also gave the persons' occupations as "radio operator" and as "chief pilot" those representations, which were false, were naturally calculated further to gain the confidence of the hotel clerk by identifying himself with persons of substance, of sufficient importance to secure a license as chief pilot of an airplane and a radio operator, and of such means that they would be able to make a flight by airplane from Canada to Topeka. These were not mere acts of preparation—they were overt acts which, coupled with the intent to cheat and defraud, came so near the accomplishment of the intended crime as to fall within the letter and spirit of the statute.

We think the information charged an offense within the meaning of the statute. The judgment is affirmed.