629 P.2d 646

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Ralph OTTO, Defendant-Appellant.**

**No. 12714.**

Supreme Court of Idaho.

April 9, 1981.

Rehearing Denied June 23, 1981.

James W. Givens, Lewiston, for defendant-appellant.

David H. Leroy, Atty. Gen., Roy L. Eiguren, Deputy Atty. Gen., Boise, Gordon W. Petrie, Sp. Deputy Atty. Gen., Lewiston, for plaintiff-respondent.

McFADDEN, Justice.

The appellant appeals his conviction of attempted first degree murder based on his hiring of an undercover police officer to kill Captain Ailor of the Lewiston Police Department. Appellant had been under investigation by Captain Ailor concerning the disappearance of the appellant's wife in August, 1976.

On October 24, 1976, appellant was in the Long Branch Saloon owned by Stan Kuykendall. Mr. Kuykendall testified that during a conversation appellant expressed a desire to find a "hit-man" to kill Captain Ailor because Ailor had been harassing him over Mrs. Otto's disappearance. Mr. Kuykendall reported this to the Lewiston Police Department. Following this report an officer telephoned appellant and said he was a "hit-man." This officer later testified that appellant stated he was willing to spend $500 to have the killing done, but after dickering a price of $1,000 was agreed upon.

The Lewiston police called in members of the Idaho State Police to assist them in investigating the matter. It was decided that Officer Watts of the Idaho State Police would wear a "bug" and attempt to record his conversations with appellant. On the afternoon of October 26, 1976, Officer Watts, wearing the transmitter, met with appellant at the Long Branch as prearranged earlier in the day. During this conversation, Watts agreed to kill Captain Ailor for $250 "up front" if he were to receive an additional $750 after the killing. It was agreed that appellant would place the $250 in a cup in Watts pickup, which appellant was seen to do later in the day. Appellant was arrested on October 27 and charged with attempted murder in the first degree, I.C. §§ 18–4001, 4003 and 306.[1]

1.    "AMENDED INFORMATION
"[T]hat on or about the 26th day of October, 1976, at the county of Nez Perce in the State

of Idaho, the aforesaid defendant then and there being committed the above-mentioned crime by then and there knowingly, wilfully

The essential question before this court is whether the appellant's conduct amounted to more than solicitation of another to murder and reached the extent or degree of an attempt under accepted principles of criminal law. We hold it did not and thus the conviction must be reversed.

The concern of the criminal law is to determine at which points along a continuum of activity criminal liability of differing degrees will attach. There can be no doubt that what the appellant did in this case was criminal as well as reprehensible. But the task facing this court is not merely to pass judgment; we must strive to correctly determine under the accepted precepts of the law whether the appellant's conviction can stand. The sincere desire to protect society from acts such as the appellant's here cannot lead us to slight this duty.

It is recognized, of course, that a close relationship exists between solicitation and attempt. In the early stages of criminal activity, the two offenses may run parallel courses. However, there exists an accepted and distinct difference between them in law, the strength of which cannot be muted by a few courts erroneously treating the terms and concepts as interchangeable.

█ It is supported beyond contradiction that, regardless how heinous, no man can be convicted for having criminal intent alone. An *actus reus* is essential. And in the sphere of inchoate criminal offenses, it is clear that not every act will, when combined with criminal intent, suffice to establish the basis for an attempt. In the voluminous jurisprudence on attempts in the criminal law, some well supported tenets have been established in regard to the act required.

LaFave and Scott state in their treatise, Criminal Law (1972):

"The crime of attempt ... consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent *which, as it is most commonly put, goes beyond mere preparation.*" (Emphasis supplied.) LaFave at 423.

See also, 1 Wharton, Criminal Law and Procedure, § 71, p. 151–2 (1957), cited with approval, *Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449, 450 (1963); Clark & Marshall, Crimes, § 4.09, p. 247–250; 22 C.J.S. Criminal Law §§ 73, 75. This element was elaborated upon in Perkins, Criminal Law (2d ed. 1969);

" 'The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made.'

. . . .

So far as the common law is concerned there is no criminal attempt unless what was done went beyond the state of preparation. The 'act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation'; although it is not required to be the 'last act' intended for that purpose." (Citations omitted.) Perkins at 557.

unlawfully, intentionally, feloniously and deliberately, with premeditation and malice aforethought, and with the intent then and there had to kill and murder one M. Duane Ailor, a human being, did attempt, but failed, to kill and murder the said M. DUANE AILOR, to-wit: Did solicit, ask, counsel, encourage, induce or otherwise procure one STEVE WATTS to kill and murder the said M. DUANE AILOR, and in addition thereto, did pay and deliver the sum of TWO HUNDRED FIFTY DOLLARS ($250.00), in United States currency, to the said STEVE WATTS for the murder of the said M. DUANE AILOR, and did further describe and identify the said M. DUANE AILOR, and his place of employment and occupation so he, the said STEVE WATTS would kill the right man, and did further promise to pay the said STEVE WATTS the additional sum of SEVEN HUNDRED FIFTY DOLLARS ($750.00), after the said M. DUANE AILOR was killed, which said conduct of the defendant was unequivocal and was designed to accomplish the said murder." (As amended February 25, 1977).

While the distinction between acts of preparation and those of commission (or as is more commonly phrased "perpetration") may be difficult to make in many situations, courts have widely adopted the differentiation.[2] See, e. g., *Hobbs v. State*, 548 S.W.2d 884 (Tex.Cr.App.1977); *Hutchinson v. State*, 315 So.2d 546 (Fla.App.1975); *Johnson v. Sheriff, Clark County*, 91 Nev. 161, 532 P.2d 1037 (1975); *Smith v. State*, 279 So.2d 652 (Miss.1973); *People v. Spencer*, 66 Misc.2d 658, 322 N.Y.S.2d 266 (1971); *Logan v. State*, 263 A.2d 266 (Me.1970); *Gervin v. State, supra; People v. Woods*, 24 Ill.2d 154, 180 N.E.2d 475 (1962) *cert. den.* 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962); *State v. Bereman*, 177 Kan. 141, 276 P.2d 364 (1954); *People v. Gallardo*, 41 Cal.2d 57, 257 P.2d 29 (1953); *State v. Schirmer*, 70 Idaho 83, 211 P.2d 762 (1949);[3] *State v. Ainsworth*, 146 Kan. 665, 72 P.2d 962 (1937).

The general rule in regard to solicitations within the context of the preparatory-perpetratory acts sufficient for an attempt[4] is well stated by the Tennessee Supreme Court in *Gervin v. State*, 212 Tenn. 653, 371 S.W.2d 449 (1963):

"The weight of American authority holds, as a general proposition, that mere criminal solicitation of another to commit a crime does not constitute an attempt. 1 Wharton, Criminal Law and Procedure, Sec. 81 at 168 (1957); 1 Burdick, Law of Crime, Sec. 106 at 117 (1946); Perkins, Criminal Law, 505, 508 (1957); Clark and Marshall, Crimes, Sec. 4.05 at 200 (6th ed. 1958); Model Penal Code, Sec. 5.02, comment at 86 (Tent. Draft No. 10, 1960); 14 Am.Jur., Criminal Law, Sec. 66 at 814 (1938) and 22 C.J.S. Criminal Law § 73 at 225 (1961). The one significant exception to this position is 1 Bishop, Criminal Law, Secs. 767, 768 at 543–546 (9th ed. 1923).

The weight of authority is, of course, not determinative, but the reasons for that position are compelling." 371 S.W.2d at 450–1.

The application of this analysis to the area of solicitation—i. e.—preparation, as well as to the facts of the instant case, is manifest.

2. The essential focus in regard to this distinction is upon the proximity of the act, both spatially and temporally, to the completion of the criminal design.

"It is often said, with variations in the exact wording, that for a criminal attempt there 'must be a dangerous proximity to success.' . . . . This does not involve an additional requirement but is included within the preparation-perpetration concept. While the measures taken with criminal intent are obviously remote they remain under the label 'preparation,' and only when apparent proximity is reached has there been the beginning of 'perpetration.'" Perkins, *supra*, at p. 572. See also LaFave, *supra*, at p. 432–434; 22 C.J.S. Criminal Law, § 75(2), p. 230–33.

The "dangerous proximity" language probably had its genesis in the often cited dissent of Justice Holmes in *Hyde v. United States*, 225 U.S. 347, 387–8, 32 S.Ct. 793, 810, 56 L.Ed. 1114 (1911), where he stated, comparing the overt act requirement necessary to support a charge of conspiracy with that necessary for an attempt to commit the conspired crime:

"... combination, intention, and overt act may all be present without amounting to a criminal attempt,—as if all that were done should be an agreement to murder a man 50 miles away, and the purchase of a pistol for the purpose. There must be dangerous proximity to success. But when that exists the overt act is the essence of the offense."

3. In *Schirmer*, this court recognized the difference between acts of preparation and the acts of perpetration necessary under the statutory definition of the offense. The defendants were charged under a statute making it a crime to kill or attempt to kill a game animal with the aid of artificial light. However, the facts in the information under which the prosecution was brought indicated that the defendants had done no more than "hunted" for such animals, i. e., they prepared to commit the offense but had found no animal to "kill or attempt to kill." The defendants were not charged with any act of perpetration proscribed by the statute; the cited authority makes it clear that the Idaho court found the distinction between preparation and perpetration determinative. 70 Idaho at 85, 211 P.2d 762.

4. The prerequisite to an understanding of the general rule is the recognition that solicitation is in the nature of the incitement or encouragement of another to commit a crime in the future. Thus it is essentially preparatory to the commission of the targeted offense. See, e. g., Black's Law Dictionary (5th ed. 1979) p. 1249; Clark & Marshall, *supra*, § 4.02, p. 219–20; 22 C.J.S. Criminal Law, § 78; Bassiouni, Substantive Criminal Law (1978) p. 224.

The "weight of authority," *supra*, is not composed solely of treatise authors, though clearly they have done the most exhaustive work on the subject. The majority of jurisdictions considering the issue have also held that solicitation is not an attempt. See, *e. g., Hobbs v. State*, 548 S.W.2d 884 (Tex.Cr. App.1977); *Johnson v. Sheriff, Clark County*, 91 Nev. 161, 532 P.2d 1037 (1975); *Hutchinson v. State*, 315 So.2d 546 (Fla. App.1975); *People v. Adami*, 36 Cal.App.3d 452, 111 Cal.Rptr. 544 (1973); *Smith v. State*, 279 So.2d 652 (Miss.1973); *People v. Spencer*, 66 Misc.2d 658, 322 N.Y.S.2d 266 (1971); *State v. Miller*, 252 A.2d 321 (Me. 1969); *Gervin v. State, supra; State v. Bereman*, 177 Kan. 141, 276 P.2d 364 (1954); *State v. Lowrie*, 54 N.W.2d 265 (Minn.1952); *State v. Lourie*, 12 S.W.2d 43 (Mo.1928); *State v. Davis*, 319 Mo. 1222, 6 S.W.2d 609 (1928); *State v. Donovan*, 90 A. 220 (Del. 1914); *Hicks v. Commonwealth*, 86 Va. 223, 9 S.E. 1024 (1889). A few courts, however, have held that solicitation can be sufficient predicate for an attempt to commit the crime solicited. *Braham v. State*, 571 P.2d 631 (Alaska 1977) *cert. den.* 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978); *State v. Gay*, 4 Wash.App. 834, 486 P.2d 341 (1971); *State v. Mandel*, 78 Ariz. 226, 278 P.2d 413 (1954). Since the state relies primarily on the minority view expressed in these last cited cases to support appellant's conviction, a brief discussion of this line of authority is called for.

These decisions rely heavily upon the proposition that when the intent that a crime be committed is clearly shown, "slight acts" on the part of the solicitor will make him liable for an attempt to commit that target crime. This theory in turn rests primarily upon the case of *Stokes v. State*, 92 Miss. 415, 46 So. 627 (1908). The court in *Stokes* stated:

"When the intent to commit crime, or, to put it more accurately, when the only proof is that it is the declared intention of a person to commit a crime merely, with no act done in furtherance of the intent, however clearly may be proved this intention, it does not amount to an attempt, and it cannot be punished as such. But, whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and commonsense administration of the law with subleties [sic] as to what constitutes preparation and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worse [sic] sense." 46 So. at 629.

It appears, however, that the language in *Stokes* as to the sufficiency of slight acts in attempt prosecutions is gratuitous. In *Stokes*, both solicitor and solicitee planned the murder, proceeded to the designated spot from which the attack was to be made, and were apprehended as the solicitor was handing the murder weapon he had earlier procured to the solicitee. An attempt, under the generally accepted rules of perpetration and proximity, had been committed; the statement of the Mississippi court is but dicta in light of the facts.[5] In an early case applying the *Stokes* language, the California court made the following observation:

"We are mindful of the fact that language appearing in *Stokes v. State* . . . that 'whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt' has received approval . . . . The statement, however, that slight acts in furtherance of the de-

---

5. It might also be noted that the "slight acts" argument in *Stokes* may well have been in response to the argument made by the defendant therein that no attempt could be found since the intended victim failed to arrive as anticipated at the scene of the planned murder. This argument is more in the nature of an

"impossibility" defense than one attacking the overt act element. The question of impossibility has long been considered separately by both texts and case law. See, *e. g.*, Clark & Marshall, *supra* at §§ 4.10–4.12; LaFave, *supra*, p. 438–446; 22 C.J.S. Criminal Law § 77; Perkins, *supra* at 566–572.

sign will be sufficient is not in conflict with the usual statements of the tests applied to aid in drawing the line at the point where preparation leaves off and execution has commenced. It still presupposes some direct act or movement in execution of the design, as distinguished from mere preparation, which leaves the intended assailant only in the condition to commence the first direct act toward consummation of his design." *People v. Miller,* 2 Cal.2d 527, 42 P.2d 308, 310 (1935). (Citations omitted.)

This seems to be a much wiser reading of the *Stokes* dicta.

We disagree with the reasoning in the case of *State v. Gay,* 4 Wash.App. 834, 486 P.2d 341 (1971). While that court noted that a "mere" solicitation is not an attempt, the court there held that the transfer of "consideration," i. e., the partial payment for the contracted killing, was a "slight" yet sufficient act upon which an attempt could be found. (This is the same "slight act" relied on in part by the *Mandel* court, *supra* 278 P.2d at 415.)

Facially there would appear to be no persuasive reason why a request to kill, however phrased or whatever enticement offered, should be treated differently under the law merely because part of the agreed upon fee has passed hands. There is no greater proximity, no significantly greater likelihood of consummation, and no act of a nature other than the incitement or preparation inherent in the solicitation itself. Washington has long accepted the "slight acts" language. However, at one time they seemed to read that language in the context of the accepted law on inchoate offenses, much like the California court in *People v. Miller, supra.* That is, the "slight act" must be of perpetration; the verbal construction does not allow a court to hold the preparatory acts themselves sufficiently proximate to establish an attempt. See, *e. g., State v. Lewis,* 69 Wash.2d 120, 417 P.2d 618, 620–22 (1966).

In *State v. Braham, supra,* 571 P.2d 631 (1977), the most recent adoption of the minority position, the Alaska court also recognized that there must be an overt act beyond mere preparation. Yet, after noting the disparate lines of authority, that court elected to join with the Arizona and Washington courts. In the factual context of the *Braham* case, the court found the requisite overt act in the solicitee's visit to the intended victim at the urging of the solicitor for the purpose of gaining the victim's confidence. At that time, the solicitee was still committed to the planned murder; it was only upon later realizing that the police were well informed of the circumstances of the planned murder that the solicitee became an informer. There thus appears to be a valid basis for the Alaska decision holding the solicitor guilty of an attempt. While on the face of the case the citation to the *Gay* and *Mandel* precedent would indicate that the solicitor's consummation of the contract to kill or the finding of other "slight acts" on his part supported his conviction of an attempt, the act actually relied upon by the court as satisfying the overt act element was the solicitee's visit with the intended victim pursuant to the plan. It is well accepted that when the parties are acting in furtherance of a plan, the solicitor shares any attempt liability that accrues due to the actions of his agent. Citation to *Gay* and *Mandel* is unnecessary.[6]

■ While the concept of "slight acts" is doubtlessly appealing in some respects, especially to those seeking to punish reprehensible acts when criminal intent is clear, use of this phrase in the manner of the *Gay* and *Mandel* decisions is improper. The solicitor of another, assuming neither solicitor nor solicitee proximately acts toward the crime's commission, cannot be held for an attempt. He does not by his incitement of another to criminal activity commit a dangerously proximate act of perpetration. The extension of attempt liability back to the solicitor destroys the distinction between preparation and perpetration. As stated by Clark and Marshall:

**6.** Many of the problems inherent in this minority position are well set forth in the persuasively reasoned and written dissent of Justice Connor in *Braham, supra* 571 P.2d at 649.

"[W]hen that course of action is followed it would seem that the zone of perpetration is pushed back into what is virtually the preparation stage, e. g., the accused inciting his prospective actor or partner." Clark and Marshall, *supra*, § 4.05 at p. 227.

It is foreseeable that jurisdictions faced with a general attempt statute and no means of severely punishing a solicitation to commit a felony might resort to the device of transforming the solicitor's urgings into a proximate attempted commission of the crime urged but doing so violates the very essence of the requirement that a sufficient *actus reus* be proven before criminal liability will attach.

■ In light of the foregoing discussion, the facts in appellant's situation take on additional clarity. Here appellant desired to have Captain Ailor murdered. In structuring his plan, he solicited an agent to commit the actual act, and in this regard he paid $250 and promised him a larger sum after the crime had been committed. Neither appellant nor the agent ever took any steps of perpetration in dangerous proximity to the commission of the offense planned. The conversation in the Long Branch at which appellant solicited the undercover policeman, and the payment of part of the agreed upon fee, are not acts of perpetration at all but are clearly the preparatory acts of incitement of another to commit a crime, i. e., of mere solicitation. These acts are not sufficient under the law above discussed to support a conviction on the charge of attempted murder. See, e. g., *Johnson v. Sheriff, Clark County*, 91 Nev. 161, 532 P.2d 1037 (1975); *Hutchinson v. State*, 315 So.2d 546 (Fla.App.1975); *People v. Adami*, 36 Cal.App.3d 452, 111 Cal.Rptr. 544 (1973); *Gervin v. State*, 212 Tenn. 653, 371 S.W.2d 449 (1963); *State v. Lourie*, 12 S.W.2d 43 (Mo.1928); *State v. Davis*, 319 Mo. 1222, 6 S.W.2d 609 (1928).

Appellant has raised various issues concerning entrapment, search and seizure, and fitness to proceed with trial. Given our determination on the question of whether

an attempt was committed here, these issues are immaterial.

Appellant's conviction on the charge of attempted first degree murder is reversed.

DONALDSON and SHEPARD, JJ., concur.

BAKES, Chief Justice, dissenting:

I

The error in the majority opinion begins with the majority's inadequate framing of the issue before us. It presents the essential question as being "whether the appellant's conduct amounted to more than solicitation ...." However, we are not involved here with how the appellant's actions relate to the crime of solicitation (if, indeed, there is such a crime in Idaho), but rather the question to be asked is whether the appellant's conduct amounted to an attempt within the meaning of I.C. § 18–306.

Implicit in the majority's rationale is the supposition that the crime of attempt cannot overlap the crime of solicitation. The majority approaches its analysis as though solicitation and attempt were statutory crimes with equal footing, each controlling a specific and exclusive area of conduct. However, there is no statutory crime of solicitation in Idaho, and even if there is a common law crime of solicitation, it is preempted by the Idaho attempt statute, I.C. § 18–306, to the extent that the two prohibitions pertain to the same conduct. I.C. § 73–116 provides that "the common law of England ... *in all cases not provided for in these compiled laws*, is the rule of decision in all the courts of this state." (Emphasis added.) The legislature *has*, however, provided an attempt statute in I.C. § 18–306, and therefore the common law rule of solicitation is not the rule of decision in the courts of this state when it conflicts with the intended application of the attempt statute.

Such is also borne out by the legislature's abolition of "the rule of the common law that statutes in derogation thereof are to be

strictly construed." I.C. § 73–102.[1] In fact, the legislature went on to require that the compiled laws of this state, "their provisions and all proceedings under them *are to be liberally construed with a view to effect their objects and to promote justice.*" (Emphasis added.) I.C. § 73–102. Thus, the clear intent of the legislature is to give its acts the widest possible scope consistent with the purpose of the statutes enacted. When there is doubt as to whether a statute or common law is the applicable law on a question, the common law must always yield to the statute to the extent that its application serves the public policy supporting it.

In the present case, the legislature has enacted a statute making it a crime to attempt to commit any crime, I.C. § 18–306, which includes, of course, an attempt to commit murder. The obvious purpose of the legislation is to protect the public from acts identifiably linked with criminal intent and indicating that the perpetrator is attempting to carry out his intent or criminal design, thereby creating a danger to the public. In the instant case, the defendant's intent to commit the target crime of first degree murder is more than evident. After first inquiring of a bartender where he could find a "hit man," the defendant was referred to an undercover officer with whom he met for over an hour discussing the details of the killing. While not supplying the murder weapon, the defendant made sure that the murder was to be done in a manner acceptable to him by discussing and approving the type of gun to be used.[2] In the course of the meeting, the defendant stated emphatically, "I don't want that _____ wounded, I want him dead." Even

after he was arrested, the defendant was overheard inquiring of a relative whether or not the "hit" had been made. The defendant's intent to murder Captain Ailor was clear and, under the circumstances, the acts of the defendant were more than sufficient to support a conviction for attempted murder under our statute. The defendant had in fact done everything necessary on his part to kill Captain Ailor. All that he had to do was wait for the result. Such a state of events clearly establishes an attempt. *See State v. Mandell*, 78 Ariz. 226, 278 P.2d 413, 415–16 (1954); *State v. Gay*, 4 Wash.App. 834, 486 P.2d 341, 346 (1971); *State v. Bowers*, 35 S.C. 262, 14 S.E. 488, 489 (1891); *Griffin v. State*, 26 Ga. 493, 506 (1858) (Lumpkin, J., concurring); *People v. Bush*, 4 Hill 133 (N.Y.1843).

Under I.C. § 18–306, it does not matter that at common law the same conduct may only have been the crime of solicitation. What does matter is whether the conduct is or is not included within the ambit of I.C. § 18–306. The majority, however, would restrict the wide scope of I.C. § 18–306 on the basis of common law. Such an action is in derogation of I.C. § 73–102, previously cited, and of the public policy supporting the enactment of I.C. § 18–306. Nevertheless, even if the majority's narrow interpretation of I.C. § 18–306 were tenable, its application by the majority directly contravenes the rule that "when a . . . legislative act is fairly open to two constructions, one of which will carry out and the other defeat some great public purpose *for which it was* designed, the former construction should be applied." *State v. State Board of Education*, 33 Idaho 415, 429, 196 P. 201, 205 (1921). Certainly, there is no greater pur-

---

1. "73–102. CODES LIBERALLY CONSTRUED—MULTIPLE AMENDMENTS TO BE COMPILED.—(1) The rule of the common law that statutes in derogation thereof are to be strictly construed, has no application to these compiled laws. The compiled laws establish the law of this state respecting the subject to which they relate, and their provisions and all proceedings under them are to be liberally construed, with a view to effect their objects and to promote justice.
. . . ."

2. The undercover officer testified as follows:
"Q. Was there a discussion as to how you would accomplish the killing?
"A. Yes, he asked me how I was going to do it. He advised me—he asked me not to use a 357 magnum because he owned a 357 magnum and the police knew it. He advised me to use a shotgun because there was no ballistics. I finally showed him a bullet from my service revolver, which is a 45 long colt, and this seemed to satisfy him that that would do the job."

pose than to protect the public from murderous acts, and that is what I.C. § 18–306 was intended to accomplish.

## II

The majority also attempts to distinguish between acts of preparation and acts of perpetration. Although this type of analysis has been accepted by some courts, the distinction is in fact highly artificial, since all acts leading up to the ultimate consummation of a crime are by their very nature preparatory. The real question is whether acts of preparation when coupled with intent have reached a point at which they pose a danger to the public so as to be worthy of law's notice. *See* Strahorn, Preparation For Crime as a Criminal Attempt, 1 Wash. & Lee L.R. 1, 4, 21 (1939). In the present case, the jury determined that the defendant's conduct had reached such a point, and I.C. § 18–306 certainly supports that conclusion.

Although it is not necessarily contended that every solicitation will constitute an attempt, the broad sweep of I.C. § 18–306 indicates that an attempt often may include solicitation within its bounds. This is certainly the case where, as here, the solicitor has done all that he needs to do in accomplishing the target crime. It may even be, under particular fact situations, that intent and danger to the public are so evident that mere solicitation itself might constitute a sufficient overt act to support an attempt conviction. As was stated long ago, "[I]t is argued, that a mere intent to commit evil is not indictable, without an act done; but is there not an act done, when it is charged that the defendant solicited another to commit a felony? The solicitation is an act; . . . ." *King v. Higgins,* 2 East 5, 17, 102 Eng.Rptr. 269, 274 (K.B.1801); *see* 1 Bishop on Criminal Law, §§ 767, 768, 768(c) (9th ed. 1923); May's Criminal Law, § 185 (2d ed. 1893); 1 McClain on Criminal Law, § 220 (1897); Blackburn, Solicitation to Crimes, 40 W.Va.Law Quarterly 135, 140–43 (1934).

The action of the majority is perhaps best summed up by the following analysis of a similar situation:

"Courts talk about solicitation in two classes of cases. (a) Where a defendant has been indicted for attempt and his acts are not sufficiently serious to come within the policy of the criminal prohibition invoked he is often held not guilty of an attempt because what he did was a mere solicitation. Actually the problem here is of the same kind as is involved in the definition of mere preparation. The only question before the court should be whether to extend the policy of the statute to cover the conduct of the defendant. *To try to draw an artificial distinction between solicitation and attempt simply results in rather absurd technicalities.* For example, in the recent case of *State v. Lowrie [Lourie],* 12 S.W.2d 43 (Mo. 1928), a wife hired another person to kill her husband. The conviction was reversed because she should have been indicted for solicitation. *The case involved the interpretation of a statute but the court forgot the statute in its desire to keep up the distinction between attempt and solicitation.*" Arnold, Criminal Attempts—The Rise and Fall of an Abstraction, 40 Yale L.R. 53, 66–67 (1930) (emphasis added).

Unfortunately, the majority is making the same mistake.

Had the defendant been arrested and charged based only on an offer to employ a "hit man," the common law crime of solicitation might be applicable, as the majority urges. However, the acts here went far beyond an offer of "employment." As discussed previously, the type of weapon to be utilized and the manner in which the hit was to be made were discussed, an agreement was reached, payment was made, and the defendant completed all the necessary steps preliminary to the "hit" being made. In view of these facts, it appears that the majority would not find an attempt under our statute until the bullet was sailing through the air. That our legislature intended such a result is inconceivable. For the reasons stated above, I would affirm the conviction.

BISTLINE, Justice, dissenting.

I do not find it necessary to engage in a debate which is largely centered around attempting to determine when solicitation leaves off and attempt takes over, or to distinguish between overt acts and slightly overt acts, or to find the line of demarcation between perpetration and preparation.

Not too long ago the Court wrestled with the *Lindquist* and *Creech* cases.[1] Lindquist was a contract killer, and the details of that crime will be found well laid out in the dissent of Justice Shepard. The main difference which I perceive in comparing that case to this is that Phillip Weitz, who contracted for the death of his wife (through one Vetch) got the killer for which he bargained—Otto did not.

No one has satisfactorily demonstrated that element which is missing in this case which was present in the Lindquist-Weitz affair. Had Vetch, who played much the same part in the Weitz scenario as did the lounge owner in this, placed Weitz in touch with a police officer rather than with a Lindquist, then three members of the Court sua sponte[2] would have held that Weitz could not have been convicted of anything.

Murder may be accomplished in many ways, and it may be attempted in many ways. Of a twenty volume work on the history of mankind, at least two volumes could be devoted to discussing the multitude of ingenious ways man has devised to kill his fellow man, and seventeen volumes could be written dealing in general with man's inhumanity to man in doing so. The point I lead to is that a man may take it upon himself to effect the death of another person in several ways. He may undertake to commit the murder. (If he fails he is clearly guilty of attempted murder, and no one argues to the contrary.) Others, desiring the commission of a murder, however, may lack the fortitude to make a direct attack, or may deceive themselves into believing that there is less risk involved if someone else does the dastardly deed. Such persons accordingly may connive to bring about the murder through an agent. If the agent fails to accomplish the act, is it any less an attempt on the part of the principal? Such is the simple question before us.

Whether a person takes on for himself the task of trying to kill another person, or tries to bring about that killing through hiring another to perform the deed, is in actuality nothing but a matter of personal choice. While the principal is guilty of murder when the contract is performed, an attempt has been made when the bargain is struck. Such to me appears to be the essence of the Washington court's holding in *State v. Gay*, 4 Wash.App. 834, 486 P.2d 341 (1971). Nor does there appear to be any sound reason for demanding that there be an exchange of consideration. In the civil area of the law mutual promises are sufficient, and I see no reason for not extending that rule of law to the criminal field. If criminals are going to contract out their services, and if there are persons who will retain those services, there is no reason why the criminal courts should decline to respect those contracts. Here, of course, Otto did pay a consideration, and there is no reason to dwell in depth on what might be the case if he had not. Such is better saved for a case where no consideration changes hands.

As far as solicitation is concerned, my understanding of the word is that it is a "seeking out." Real estate agents solicit new listing agreements. Would-be sellers sometimes solicit real estate agents—both to sell property for them, and to assist in

1. *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979); *State v. Creech*, 99 Idaho 779, 589 P.2d 114 (1979).

2. Neither the majority opinion authored by Justice McFadden, nor the dissenting opinion authored by Justice Bakes, extends the credit due the Court for here having sua sponte raised the dispositive issue, and the only issue upon which the Court is divided. In *State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1980), in suggesting that there were several serious constitutional errors, only one of which had been presented at trial, I had hoped to excite the Court's sense of fundamental fairness, but even a citation to *State v. Cariaga*, 95 Idaho 900, 904, 523 P.2d 32, 36 (1974) ("[n]either can this Court ignore the issue because it has not been assigned as error in the original briefs") failed to do so. That the Court is observed now returning to the doctrine of the latter mentioned case may be a good omen.

selling property. Out of such solicitations contracts are born, and agencies created. So with lawyers. A client in need of a good lawyer solicits an attorney to represent him. If the attorney agrees, a legal relationship is created. Solicitation either accomplishes its purpose, or it does not. If it does, and a contractual relationship is created, various kinds of agencies are created; I have briefly mentioned that of broker and that of attorney. There are others, and one of those is our concern today. Here a contract was entered into, the main element of which was that Fredrickson was retained by Otto to do away with Ailor. So far as Otto was concerned the machinery for bringing about Ailor's death was as much set in motion as it would have been if done by means other than by use of Fredrickson.

Contracts, other than government offers of reward,[3] involving a payment and/or a promise to pay for the killing of a person, are unlawful, and equally unenforceable. Nevertheless, a contract is a contract, and many an unenforceable civil contract has been fully performed. Many an unlawful contract to perpetrate a crime has also been

performed. The contract is there, the deal has been made, and it is logically inescapable that when a man enters into a contract with another man to bring about the unlawful death of an intended victim, that man is then and there guilty of attempting to effect or bring about a murder.

I am unable to see that the principal is to be relieved of his criminal liability simply because his agent fails in the purpose of his agency either by fouling up, by dishonesty, or by turning out to be a police officer.

Where it has come to pass in this country that we have people who will accept a contract for a killing, it is only fair and just that, where others agree to purchase such services, those contracts should be accorded the intent contemplated by the contracting parties.

The judgment of conviction should be affirmed.

3. I.C. § 67–802(8) specifically empowers the governor of Idaho to offer money for the apprehension of a fugitive. Apprehension, of course, means the arrest or seizing of the fugitive, but if the fugitive resists, and his death results therefrom, he has nonetheless been apprehended, and the person responsible has earned the promised compensation. *Smith v. State*, 38 Nev. 477, 151 P. 512 (1915). The case was submitted on an agreed statement of facts:

" 'That during or about the month of January, 1911, "Harry Cambron and three associates" were murdered in Washoe county, state of Nevada. That thereafter the Legislature of the state of Nevada authorized the offer of a reward for the "arrest and conviction of the person or persons guilty of the murder of Harry Cambron and three associates," such act having been approved on February 17, 1911. That thereafter, and on the 17th day of February, 1911, Tasker L. Oddie, Governor of the state of Nevada, did offer a reward of $1,000 in each case for the arrest and conviction of the person or persons guilty of the murder of "Harry Cambron and three associates." That "Harry Cambron and three associates" were murdered by a band of Indians, which included "Indian Squaw Jennie," "unknown Indian boy," "Shoshone Mike," "Buck Disenda," "Buck Kinnan," "Buck Cupena," and "unknown In-

dian squaw." That A. E. Smith, Joe Reeder, George Holmes, Warren Fruit, Henry Hughes, Jack Ferguson, Bill Parsons, Otto Van Norman, and Ben Cambron, plaintiffs herein, were members of a posse on the trail of the said Indians, and did, on or about the 26th day of February, 1911, kill the certain Indians above referred to in an attempt to arrest said Indians, who were then and there murderers of said "Harry Cambron and three associates," while said Indians refused to surrender, and were resisting arrest for the said murder of said "Harry Cambron and three associates," but that none of said assassins were arrested, tried, or convicted by any court.' " 151 P. at 512.

The Nevada court held:

"In the case at bar the arrest and conviction of the persons for whom the reward was offered was rendered impossible by reason of their being killed while resisting arrest. Their killing, in the manner detailed in the agreed statement of facts, was justifiable, and operated as a lawful excuse for noncompliance with the full conditions of the reward. It is our conclusion that there has been shown a substantial compliance with the conditions of the reward, and the respondents are entitled to recover.

"Judgment affirmed." *Id.* 151 P. at 514.