751 A.2d 627 (1999)
331 N.J. Super. 248
STATE of New Jersey, Plaintiff,
v.
Aziz SUNZAR, Defendant.
Superior Court of New Jersey, Law Division (Criminal), Essex County.
Decided September 17, 1999.
Edward R. Bonnano, Deputy Attorney General, for the State of New Jersey.
C. Robert Sarcone, Bloomfield, for defendant.
WEISSBARD, J.S.C.
This environmental crimes prosecution requires the court to decide whether mere solicitation of criminal conduct, unaccompanied by any overt act in furtherance, rises to the level of an attempt. A review of the legislative history leads to the conclusion that such conduct is punishable under N.J.S.A. 2C:5-1, even though that result arguably places New Jersey in a "minority" position among the states that have addressed this issue.
Defendant, Aziz Sunzar, was charged in a three count State Grand Jury indictment with 1) recklessly causing the abandonment of hazardous waste or toxic pollutants in Newark on March 25, 1998; 2) recklessly disposing of hazardous waste without authorization from the Department of Environmental Protection (DEP) on the same date; and 3) purposely attempting to dispose of hazardous waste on April 2, 1998. After a jury trial, defendant was found not guilty on the first two counts (the March 25 offenses) and guilty on the third count (the April 2 offense).
*628 He has moved for a new trial pursuant to Rule 3:20-1, alleging that the verdict was against the weight of the evidence and that there were errors rendering the trial unfair and requiring that the verdict be set aside. After argument, it became apparent that he also seeks a judgment of acquittal under Rule 3:18-2.
A brief summary of the evidence is necessary for an understanding of the issue addressed in this opinion. The defendant is the owner of a fast food establishment at 661 Martin Luther King Blvd., Newark, known as Utah Chicken. The State's proofs were that in late March the defendant undertook a cleanup of the basement of his building using local labor and a dumpster, which was placed in front of the property, for the debris removed from the basement. In late March (on or about March 25) several large 55 gallon drums were on the sidewalk in the vicinity of the dumpster. The source of the drums remains obscure since none of the witnesses could testify as to their origin. In any event, after determining that the drums would not fit into the dumpster, the defendant asked several of the laborers to move them to the rear of an adjoining, vacant building, which was done. The State's proof was that the drums had not been in that location previously.
A tenant in another adjoining building smelled a terrible odor emanating from the drums, which were only about 50 feet from his bedroom window overlooking the rear of the property. He also saw a hand truck in the vicinity of the drums. His investigation led him to learn, from one of the men involved, that the defendant was responsible for the drums being moved to the rear yard. He then confronted the defendant, who denied any involvement. However, believing that the defendant was responsible and concerned about the smell, the neighbor paid the same men to move the drums back to the front of the defendant's property.
On April 2 the defendant asked one or more of the same men to move the drums from the area in front of his business across the street by a church, but they refused. At that point, the defendant and yet another man began to move one of the drums toward the rear again but they were stopped before the move could be accomplished, at which point the authorities were summoned. When questioned, defendant said he was simply attempting to put the drums back where they originated.
Such were the State's proofs, so far as relevant to this motion. Of course, the State proved that the drums contained hazardous material or toxic pollutants as defined by the law.
The defense evidence was to the effect that the drums had been seen in the rear of the adjacent property for a long time, perhaps as much as two years. Defendant claimed that the drums appeared in front of his property on April 2 and he had no idea how they got there. He denied paying anyone to move them and denied asking to have them moved by the church. He admitted that when stopped on April 2, he and his helper were simply attempting to put the drums back where he believed they originated, at the rear of the adjacent vacant building.
The State defends the guilty verdict on count 3 by focusing upon defendant's request to have the drums moved to the area of the church across the street from his business, a position which brings into sharp focus the question of whether such a naked solicitation, never acted upon, can sustain a conviction for attempt.
We begin our inquiry with State v. Jovanovic, 174 N.J.Super. 435, 416 A.2d 961 (Resentencing Panel 1980), aff'd 181 N.J.Super. 97, 436 A.2d 938 (App.Div.1981). Jovanovic had been convicted of the common law offense of solicitation to commit arson, in violation of former N.J.S.A. 2A:85-1, a statute which preserved common law crimes of an indictable nature. The issue before the Resentencing Panel was whether the New Jersey *629 Code of Criminal Justice had abolished the common law offense of criminal solicitation, whose status as a substantive crime had been confirmed in State v. Blechman, 135 N.J.L. 99, 50 A.2d 152 (Sup.Ct.1946). The court concluded that the Criminal Law Revision Commission, upon whose work the Code was largely based, "intended to make solicitation punishable as an attempt", Jovanovic, supra, 174 N.J.Super. at 439, 416 A.2d 961, with the result "[T]hat the 2A offense of criminal solicitation is now punishable as criminal attempt in violation of N.J.S.A. 2C:5-1." Id. at 441, 416 A.2d 961. Notwithstanding that broad pronouncement, a closer examination of the facts of Jovanovic reveals the actual holding to be somewhat narrower. There, the defendant met with an officer posing as an arsonist for hire. He told the officer that he was having financial problems with a building he owned and that a foreclosure was imminent. If he was unable to sell the building, defendant wanted it burned as soon as he had obtained insurance. The defendant and the undercover officer actually "[I]nspected the layout of the building to see how best to facilitate the arson." Id. at 438, 416 A.2d 961. They discussed other details of the scheme, and defendant gave the officer his home phone number for future contacts. Finally, a price was agreed upon and a down payment discussed. Ibid. In sum, the evidence revealed much more than simply solicitation. As the court said, the defendant actually engaged in conduct "in furtherance" of the solicitation, providing "bits and pieces of information [that] were very valuable to a torchman," thereby satisfying the "substantial step" requirement of N.J.S.A. 2C:5-1a(3). Id. at 440-441, 416 A.2d 961. Thus, it appears that the court's actual holding is that what formerly constituted solicitation is now subsumed within the 2C crime of attempt, not that the two offenses are to be equated. Our leading commentator on the Code agrees, noting that Jovanovic "does not reach the issue of whether solicitation alone would have been sufficient". Cannel, New Jersey Criminal Code Annotated, Comment 6 on N.J.S.A. 2C:5-1 (Gann 1999).
Authorities elsewhere are divided on the subject. The majority view, shared by both courts and commentators, is that solicitation alone is only preparatory to the actual crime and does not constitute an attempt. State v. Otto, 102 Idaho 250, 629 P.2d 646, 649 (1981) (collecting authorities); People v. York, 60 Cal.App.4th 1499, 71 Cal.Rptr.2d 303, 306 (4th Dist.1998); State v. Baxley, 633 So.2d 142, 145 (La. 1994). The majority view is premised on the notion that "no man can be convicted for having criminal intent alone. An actus reus is essential." Otto, supra, 629 P.2d at 647. A democratic society such as ours "does not punish one for his thoughts alone, regardless of how malevolent they may be. If the law were otherwise, there would be an intolerable invasion of one's privacy ..." Braham v. State, 571 P.2d 631, 636 (Alaska 1977). To constitute an attempt not only must there be an intent to commit an offense, but an act in furtherance of that intent, which "goes beyond mere preparation." Otto, supra, 629 P.2d at 647 (quoting from LaFave and Scott, Criminal Law p. 423 (1972)). The necessary act, sometimes referred to as an "overt" act, has been defined as "an outward act done in pursuance and manifestation of an intent or design." Braham, supra, 571 P.2d at 637. The "essential focus ... is upon the proximity of the act, both spatially and temporally, to the completion of the criminal design." Otto, supra, 629 P.2d at 648. "There is not the same degree of heinousness in solicitation as in attempts, nor is solicitation as likely to result in a completed crime, there not being the same dangerous proximity to success as found in attempts" Gervin v. State, 212 Tenn. 653, 371 S.W.2d 449, 451 (1963). While solicitation may supply an element of an attempt, the majority position is that "to merge attempts and solicitation bastardizes the concepts of each and breeds further confusion in an *630 area already wrought with confusion." Id. at 452.
The minority view is supported by a number of cases cited in Otto, supra, as well as by more recent decisions, although many of them simply turn on a finding of additional acts, beyond mere solicitation, sufficient to support the substantial step requirement. For example, in State v. Kilgus, 128 N.H. 577, 519 A.2d 231 (1986), the defendant asked another to murder someone, agreed to and actually paid "up front" money, identified the intended victim and instructed that the body had to be found outside New Hampshire. As the court properly held, these acts went beyond "mere" or "naked" solicitation and constituted a substantial step toward commission of murder. It was a similar set of facts that split the court in Otto, supra, 629 P.2d at 646 (dissenting opinion). See also State v. Manchester, 213 Neb. 670, 331 N.W.2d 776 (1983) (Defendant made plans for the murder, solicited the killer, discussed the contract price, set specific money aside, arranged for the weapon and scope, and showed the killer the victim, his residence and place of work). The majority and dissenting opinions in Braham, supra, further exemplify the way in which different views of the facts can divide reasonable minds as to whether the defendant's conduct constituted an attempt or merely a solicitation. The dissenter there quoted from Justice Holmes in Commonwealth v. Kennedy, 170 Mass. 18, 48 N.E. 770, 771 (1897), to the effect that the determination of whether a defendant's conduct has crossed the line of mere preparation cannot be reduced to a mechanical test. The defendant's acts "[M]ust come pretty near to accomplishing [the] result before the law will notice it...." Braham, supra, 571 P.2d at 650.
The minority position is perhaps best summed up in the dissenting opinion of Chief Justice Bakes, where he noted that the effort to distinguish between "acts of preparation and acts of perpetration",
[I]s in fact highly artificial, since all acts leading up to the ultimate consummation of a crime are by their very nature preparatory. The real question is whether acts of preparation when coupled with intent have reached a point at which they pose a danger to the public so as to be worthy of law's notice.
Otto, supra, 629 P.2d at 653. In the end, whether acts are so preparatory as to not constitute an attempt or are sufficiently close to consummation of the crime as to constitute an attempt, "is a question of degree and depends upon the facts and circumstances of a particular case." Braham, supra, 571 P.2d at 637. Under this approach it would be a rare case decided as a matter of law. Ordinarily the issue would be left to the jury.
The present case poses the issue rather starkly. Defendant's request to have the drums moved across the street by the church, a request immediately refused, amounted to no more than a naked solicitation. "Solicitation involves no more than asking or enticing someone to commit a crime," State v. Gay, 4 Wash.App. 834, 486 P.2d 341, 345 (1971). Since New Jersey has no remaining common law offense of solicitation nor a statute specifically prohibiting solicitation as such, the court must determine whether solicitation, without any further act in furtherance of the request, constitutes an attempt.
N.J.S.A. 2C:5-1a requires that defendant's act constitute "a substantial step in a course of conduct planned to culminate in his commission of the crime," and that such conduct be "strongly corroborative of the actor's criminal purpose." Further, the defendant, acting in this manner, must have the "kind of culpability otherwise required for commission of the crime." In this case the required mental state is "purposeful."
The State points to Cannel's suggestion that the interlocking effect of N.J.S.A. 2C:5-1c with 2C:2-6c(1)(a), does indeed make mere solicitation a crime. The latter provision sets out the standards for liability for the conduct of another. It provides that a defendant may be liable for another's *631 conduct if the defendant is an accomplice of that other person in the commission of the crime. One may become an accomplice if, with the purpose of promoting or facilitating the commission of the offense he "solicits such other person to commit it." (emphasis added) That provision, standing alone, requires that the offense actually be committed by the other person, the person solicited. 2C:5-1c reads as follows:
A person who engages in conduct designed to aid another to commit a crime which would establish his complicity under section 2C:2-6 if the crime were committed by such other person, is guilty of an attempt to commit the crime although the crime is not committed or attempted by such other person. (emphasis added)
While the combination of these two provisions would certainly seem to criminalize the unsuccessful solicitation of another to commit a crime, that result only follows where the other person is a party to the criminal scheme; that is, one can only be an accomplice of a person who themselves had the requisite intent to commit the crime. Thus, when the statute talks of soliciting "such other person to commit it" (emphasis added), "it" refers to the crime in question which the "other person" intended to commit. This conclusion is made clearer by reference to 2C:2-6b(1), which deals separately with responsibility for causing an innocent person to engage in criminal conduct. In this case, the two men solicited by defendant, and who testified at trial, were innocent agents, not having been shown to share defendant's knowledge of the toxic contents of the drums. Indeed, it was never suggested that they were accomplices nor did the court charge the jury, as it surely would have, to consider their accomplice status in assessing credibility. As a result, in this case the combination of 2C:5-1c and 2C:2-6c(1)(a) does not provide an easy answer to the question at issue. Nevertheless, the court concludes that mere solicitation may be punished as an attempt, as the court suggested in State v. Jovanovic, supra.
The Model Penal Code, which provided the "conceptual source", Richardson v. Nickolopoulos, 110 N.J. 241, 242, 540 A.2d 1246 (1988), for much of our present Code, included the following provision:
A person is guilty of solicitation to commit a crime if with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct that would constitute such crime or an attempt to commit such crime or would establish his complicity in its commission or attempted commission.
Model Penal Code and Commentaries § 5.02(1) (Official Draft and Revised Comments 1985). Indeed, the provision went on to provide that even if the actor failed to communicate with the person solicited, such fact would be immaterial, so long as the actor's conduct "was designed to effect such communication." Id. at § 5.02(2). In making that recommendation, the Institute recognized the "difference of opinion as to whether a genuine social danger is presented by solicitation to commit a crime" but concluded that "purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for liability." Ibid. After considering the same arguments the New Jersey Criminal Law Revision Commission likewise "concluded that solicitation should be made an offense." II The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, Commentary at 119 (1971), [hereinafter Revision Commission]. They recommended, however, that solicitation not be included in the Code as a separate offense but, "if otherwise sufficient", be included within the concept of "substantial step" under the attempt provision. Ibid. Further, their recommendation was that solicitation of an *632 innocent agent could constitute such an attempt.[1]
In furtherance of their recommendation, the Revision Commission included in the original version of 2C:5-1b a list of seven examples of conduct which were not to be considered insufficient; stated differently, subsections b(1) through (7) "[S]pecified conduct which would prima facie satisfy the `substantial step' requirement of N.J.S.A. 2C:5-1a(3)". State v. Jovanovic, supra, 174 N.J.Super. at 439, 416 A.2d 961. The seventh and final item on that list, virtually identical to the Model Penal Code provision quoted above, read as follows:
"Soliciting an agent, whether innocent or not, to engage in specific conduct which would constitute an element of the crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission."
That entire list, however, was ultimately not enacted and is not found in our Code as it now exists. In State v. Jovanovic, supra, the court addressed the significance of that omission and concluded that it did not evince a legislative purpose to exclude solicitation from the attempt prohibition. We are, of course, bound by that decision, which leads to the unavoidable conclusion that mere solicitation, even when unaccompanied by any other act in furtherance, can constitute an attempt.
By requiring "the making of sufficient finding as to both the specificity of the conduct solicited and the actor's purpose," unwarranted prosecutions would be guarded against. Revision Commission, supra, at 120. The necessity of a "substantial step" serves to remove "remote preparatory acts" from the ambit of the statute, See, State v. Speth, 323 N.J.Super. 67, 88, 731 A.2d 1232 (App.Div.1999), while the "strongly corroborative of the actor's criminal purpose" requirement, protects against criminal liability for idle requests that are not meant to be taken seriously. State v. Fornino, 223 N.J.Super. 531, 541, 539 A.2d 301 (App.Div.1988), certif. denied, 111 N.J. 570, 546 A.2d 499 (1988), cert. denied, 488 U.S. 859, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988). Indeed, the Model Charge on attempt, which was delivered in this case, instructs the jury that "the step must be substantial, not just some remote preparatory act and must show that the accused has a firmness of criminal purpose."
Thus, New Jersey falls into that minority of jurisdictions which hold that a mere solicitation is not excluded from the attempt statute. Whether such conduct should be subject to criminal sanction is ultimately a legislative decision, embodying the attitude of the lawmakers "toward the advisability of extending the law" in this manner. Hutchinson v. State, 315 So.2d 546, 547 (Fla.Dist.Ct.App.1975). Based on the history outlined above, it appears that our legislature has opted for an expansive version of the attempt law, notwithstanding the "majority" view, which governs elsewhere.
In this case the jury could have found that the solicitation, when combined with defendant's actions the week before, and particularly with his aborted effort to move the drums with the unidentified man on April 2, did constitute a "substantial step", "strongly corroborative" of his criminal purpose, that is, to dispose of hazardous waste. Since the jury was charged appropriately, defendant is not entitled to *633 either a judgment of acquittal or a new trial and his motion is therefore denied.
NOTES
[1] Id. at 120. The work of the Revision Commission, and in particular its Commentary, has been repeatedly cited and relied upon by our courts as a source of "legislative history" for our present Code of Criminal Justice. See e.g. State v. Molnar, 81 N.J. 475, 486, 410 A.2d 37 (1980); State v. Crawley, 90 N.J. 241, 244-247, 447 A.2d 565 (1982); State v. Roth, 95 N.J. 334, 351-352, 471 A.2d 370 (1984); State v. Tate, 102 N.J. 64, 69, 505 A.2d 941 (1986); State v. Weeks, 107 N.J. 396, 402-403, 526 A.2d 1077 (1987); State v. Breakiron, 108 N.J. 591, 606, 532 A.2d 199 (1987); State v. Brent, 137 N.J. 107, 114, 644 A.2d 583 (1994); State v. Demarest, 252 N.J.Super. 323, 328, 599 A.2d 937 (App.Div.1991); State v. Brown, 188 N.J.Super. 656, 661, 458 A.2d 165 (Law Div.1983).